Paul W. GAMBRILL, Paula N. Gambrill

v.

**ALFA ROMEO, INC.**

**Civ. A. No. 87-7933.**

United States District Court, E.D. Pennsylvania.

Sept. 23, 1988.

Paul I. Guest, King of Prussia, Pa., for plaintiffs.

Albert C. Oehrle, Norristown, Pa., for defendant.

## MEMORANDUM

RAYMOND J. BRODERICK, District Judge.

A non-jury trial was held in this diversity action in which the plaintiffs ("Gambrills"), who purchased a new 1987 Alfa Romeo, seek recovery pursuant to the Automobile Lemon Law, 73 P.S. § 1951 *et seq.;* Unfair Trade Practices and Consumer Protection Law, 73 P.S. § 201-1 *et seq.;* Uniform Commercial Code, 13 Pa.C.S. § 2715; and the Magnuson–Moss Warranty–Federal Trade Commission Improvement Act, 15 U.S.C. § 2310. The defendant ("Alfa Romeo"), a foreign corporation with its principal place of business in New Jersey, claims that the automobile was not defective when sold and that the malfunction was caused by the Gambrills' misuse of the car.

The Court makes the following findings of fact and conclusions of law:

On June 11, 1987, plaintiffs, who are residents of Pennsylvania, purchased a new 1987 Alfa Romeo Graduate Coupe from YBH Porsche–Audi ("YBH"), a dealer located in Edgemont, Pennsylvania. The total sales price was $18,669.60, itemized as follows:

| | |
|---|---|
| Cash Price | $15,200.00 |
| Tags | 19.00 |
| Lien Fee | 5.00 |
| Sales Tax | $ 642.00 |
| Document Fee | 11.00 |
| Finance Charge | 2,792.60 |
| Total | $18,669.60 |

Plaintiffs have not paid $1,512.69 of the finance charges which reduces the amount claimed to $17,156.91. The car was purchased for personal use primarily by Mr. Gambrill. The car was manufactured and/or imported by defendant Alfa Romeo. Included with the car sold to plaintiffs was defendant's 1987 New Car Limited Warranty for 12 months or 36,000 miles covering parts and labor necessary to correct any manufacturing defects and excluding failures or damage caused by misuse.

On October 9, 1987, Mr. Gambrill drove the car home and parked it in the garage. The next morning he was unable to start the car and he telephoned YBH, the authorized dealer, who sent a tow truck and towed the automobile to its garage on October 10, 1987. At that time, the car was four months old and had been driven 6,251 miles.

Mr. Gambrill telephoned or visited YBH on many occasions in the following weeks. YBH personnel informed him that they were in the process of repairing the car. At no time did YBH provide the Gambrills with an estimate for the work on the car, nor did anyone seek or obtain their consent for any repair work. The Gambrills were told by YBH that the repairs would be covered by the warranty. On December 7, after two months of waiting for the repairs to be completed, Mr. Gambrill had the car removed from YBH and towed to his house. When removed from YBH, the car's engine was disassembled, with some component parts in the trunk, some in the passenger compartment, and others left at YBH. The car remains inoperable.

The Alfa Romeo Graduate is powered by a four cylinder engine similar to engines manufactured by Alfa Romeo since 1954 and is equipped with a tachometer and a five-speed manual transmission.

A YBH mechanic was unable to start the plaintiffs' car after it was towed in, and found that the valves were bent. It was the mechanic's opinion that the car had

been "over-revved", causing the valve rods to bend. The plaintiffs' expert testified that there was no evidence of over-revving. The Court finds that the evidence presented by the defendant that the valve rods were bent as a result of the plaintiffs' over-revving was clearly insufficient for this Court to find that the manner in which the Gambrills drove their automobile was the cause of the defective condition. Mr. Gambrill testified that he never over-revved, and the Court found his testimony credible.

The Court also finds the plaintiffs were never warned that the engine would be damaged in the event it was over-revved. The words "over-rev" or "over-revved" do not appear in the Owner's Manual. It does state on page 25 of the Owner's Manual under the section entitled "Driving Precautions":

> These recommendations should also be followed:
> —Take care not to run the engine beyond the maximum RPM range shown as a red area on rev. counter dial.

Plaintiffs' Exhibit 6, p. 25. Such precatory language sharply contrasts with the evidence presented by Alfa Romeo at trial that a single instance of over-revving could cause instantaneous loss of compression and major engine damage. If this is indeed the case, Alfa Romeo cannot expect a consumer to exercise the caution necessary to avoid such a danger with the mere "recommendation" that the driver "should" "take care" not to over-rev the engine.

YBH installed new valves but when the engine was assembled "lower end noises" were detected and the engine was again disassembled and new parts were ordered. When the new parts arrived from Italy, it was found that some of the parts were defective and it became necessary to order new parts. After 59 days of being told that his car was being worked on, Mr. Gambrill had his Alfa Romeo towed home to his garage where it remains inoperative.

The Court finds that the plaintiffs have carried their burden of showing that the Alfa Romeo had "a defect or condition which substantially [impaired] the use, val-

ue, or safety of a new motor vehicle and [did] not conform to the manufacturer's express warranty" and that the manufacturer failed to repair or correct the defect within a reasonable period of time.

Section 8 of the Lemon Law, 73 P.S. § 1958 creates a cause of action for "any purchaser of a new motor vehicle who suffers any loss due to nonconformity of such vehicle as a result of the manufacturer's failure to comply with this Act ..." There is no dispute that plaintiffs are "purchasers", defendant is a "manufacturer", and the Alfa Romeo is a "new motor vehicle" as these terms are defined in 73 P.S. § 1952. As heretofore pointed out, the automobile was purchased new, had been driven only 6,251 miles, and was only four months old on the day it malfunctioned.

The consumer's right to relief under the Lemon Law arises "[i]f the manufacturer fails to repair or correct a nonconformity after a reasonable number of attempts." 73 P.S. § 1955. Since the car was kept by YBH, an authorized service facility of defendant, for over 30 days, the law presumes that a "reasonable number of attempts" have been made to repair the car. 73 P.S. § 1956. Accordingly, the only issue presented is whether there was a nonconformity which needed repair.

"Nonconformity" is defined as

> A defect or condition which substantially impairs the use, value or safety of a new motor vehicle and does not conform to the manufacturer's express warranty.

As the Court has found, the car had a defect or condition which substantially impaired its use and did not conform to the manufacturer's express warranty.

There is no doubt that the Gambrills' new Alfa Romeo had a defect or condition which substantially impaired its use or value. The car has been immobilized since October 1987 despite defendant's attempts during a period of two months to repair it. With the engine largely dismantled, the car has sat idle in the Gambrills' garage since December 1987. Its condition has prevented its use altogether and substantially impaired its value.

■] In order to prevail, plaintiffs must show that the existence of the defect or condition is a violation of the defendant's warranty. Defendant's warranty coverage is limited to manufacturing defects. Defendant contends that plaintiffs have the burden of proving with specificity the existence of a manufacturing defect. The Court does not agree.

The Automobile Lemon Law enacted by the Pennsylvania Legislature in 1984 changed significantly the rights of new automobile purchasers in that it expanded their rights and it also expanded the obligations of the manufacturers. The refund or replacement remedy provided by the Act is available to the purchaser only after the manufacturer is unable after a reasonable time (as defined in the Act) to repair the "nonconformity". 73 P.S. § 1954(a) of the Act provides:

> (a) Repairs required.—The manufacturer of a new motor vehicle sold and registered in the Commonwealth shall repair or correct, at no cost to the purchaser, a nonconformity which substantially impairs the use, value or safety of said motor vehicle which may occur within a period of one year following the actual delivery of the vehicle to the purchaser, within the first 12,000 miles of use or during the term of the warranty, whichever may first occur.

As the Court has found, this new Alfa Romeo ceased functioning after four months and 6,251 miles of use.

73 P.S. § 1956 provides:

> It shall be presumed that a reasonable number of attempts have been undertaken to repair or correct a nonconformity if:
>
> (1) the same nonconformity has been subject to repair three times by the manufacturer, its agents or authorized dealers and the nonconformity still exists; or
>
> (2) the vehicle is out-of-service by reason of any nonconformity for a cumulative total of 30 or more calendar days.

As the Court has found, the Alfa Romeo was out of service for 59 days in the garage of the authorized dealer and has remained inoperable ever since.

■] The Automobile Lemon Law specifically provides that if the manufacturer is unable to repair or correct the nonconformity within the time provided in the Act, the purchaser has the option of a comparable motor vehicle of equal value or upon return of the vehicle a refund of the full purchase price, including all collateral charges, less a reasonable allowance for the purchaser's use of the vehicle. 73 P.S. § 1955. The plaintiffs have demanded a refund.

The Automobile Lemon Law makes it clear that pursuant to this Court's findings of fact, the Gambrills are entitled to the refund provided by the Act upon return of the car to the defendant in the following amounts:

| | |
|---|---|
| Refund of Purchase Price | $17,156.91 |
| Allowance for Purchaser's Use (6,251 miles at 10 cents per mile) | —625.10 |
| | $16,531.81 |
| Allowance to plaintiffs for use of '78 Dodge from 12/8/87 to 10/8/88 which automobile Mr. Gambrill was required to purchase to go back and forth to his place of work (3,200 miles at 10 cents per mile) | +320.00 |
| | $16,851.81 |

Accordingly, judgment will be entered in favor of the plaintiffs and against the defendant in the amount of $16,851.81 conditioned upon the plaintiffs paying the balance of the amount due and owing to the lienholder, Meridian Bank, and delivering the Alfa Romeo automobile and its title, free and clear of all liens, to the defendant.

Although the Automobile Lemon Law provides that any violation of the Act shall also be a violation of the Unfair Trade Practices and Consumer Protection Law, the Court declines in its discretion to award three times actual damages in this case. Furthermore, although the Court also finds a breach of the express warranty of the defendant, no additional damages will be awarded pursuant to the Uniform Commercial Code and the Magnuson–Moss Warranty Act. The Court finds, however, that the plaintiff is entitled pursuant to 73 P.S.

§ 1958 to recover reasonable attorney's fees. In the event the parties are unable to agree as to a reasonable counsel fee, the plaintiff shall file a verified petition setting forth in detail the time and manner of services rendered and the hourly rates customarily charged for such services.

## ORDER

AND NOW, this 23rd day of September, 1988, for the reasons set forth in this Court's Memorandum of September 23, 1988,

IT IS ORDERED: Judgment is ENTERED in favor of the plaintiffs, Paul W. Gambrill and Paula N. Gambrill and against the defendant, Alfa Romeo, Inc. in the amount of $16,851.81 conditioned upon the plaintiffs paying the balance of the amount due and owing to the lienholder, Meridian Bank, and delivering the Alfa Romeo automobile and its title, free and clear of all liens, to the defendant.