**Jane E. NEFF and Susan P. Marcel, D.O., on behalf of themselves and all others similarly situated**

v.

**GENERAL MOTORS CORPORATION.**

Civ. A. No. 95–3680.

United States District Court, E.D. Pennsylvania.

Nov. 7, 1995.

Ann D. White, Mager, Liebenberg & White, Philadelphia, PA and Jerold B. Hoffman, Hoffman & Edelson, Jenkintown, PA, for plaintiffs.

John J. O'Donnell, Lavin, Coleman, Finarelli & Gray, Philadelphia, PA, for defendant.

*MEMORANDUM*

DALZELL, District Judge.

I. *Factual Background*

On May 2, 1995, plaintiff Jane E. Neff filed a civil action in the Court of Common Pleas of Philadelphia County against General Motors Corporation ("GM"). Neff, the owner of a 1991 Buick Regal, commenced this putative class action[1] on behalf of the approximately three million "persons or entities in the Unit-

---

**1.** We say "putative" class action because Pennsylvania Rule of Civil Procedure 1707(a) requires a plaintiff to move for certification of the class within thirty days after the pleadings are closed or within thirty days after the last required pleading was due, Pa.R.C.P. 1707(a), 42 Pa.Cons.Stat.

Ann., something Neff had not done when GM removed. Furthermore, we have not yet undertaken our duty under Federal Rule of Civil Procedure 23(c) to determine whether this action may be maintained as a class action.

ed States who currently own or lease a 1988 to 1993 Buick Regal, Oldsmobile Cutlass Supreme, Pontiac Grand Prix, or Chevrolet Lumina ('GM W–Body Car') or who previously owned or leased a GM W–Body Car and suffered economic loss or damage". Neff Complaint ¶ 1. Specifically, Neff alleges that GM sold W–Body cars with defective rear disc brake caliper pins, which tended to corrode, rendering the brakes unusable and causing a safety hazard and premature wearing. *Id.* ¶ 2. Neff seeks an unspecified amount of damages, plus attorneys' fees, for five asserted causes of action.[2]

GM removed the case to this Court pursuant to 28 U.S.C. § 1441(a)[3] on June 12, 1995, based on its assertion that we have diversity jurisdiction under 28 U.S.C. § 1332. Notice of Removal ¶ 2. GM claims that the over–$50,000 amount in controversy requirement has been satisfied because Count I includes a claim for attorney's fees pursuant to 73 Pa. Cons.Stat.Ann. § 201–9.2(a), which GM contends must be included in the calculation of the jurisdictional amount. Notice of Removal ¶¶ 5–6.[4]

Plaintiffs now move to remand, contending that the named plaintiffs cannot meet the amount in controversy. GM argues that the named plaintiffs satisfy the requirement because plaintiffs' potential attorneys' fees must be included when calculating the amount in controversy. After the motion and response were filed, we ordered the parties to file supplemental briefs on the plaintiffs' damages. Because we hold that the named plaintiffs cannot satisfy the amount in controversy, we shall remand this case to the Court of Common Pleas.

## II. *Legal Analysis*

 Federal courts are courts of limited jurisdiction that have only such power that Article III of the Constitution authorizes and the statutes thereunder define. *Kokkonen v. Guardian Life Ins. Co. of Am.,* —— U.S. ——, ——, 114 S.Ct. 1673, 1675, 128 L.Ed.2d 391 (1994); *Employers Ins. of Wausau v. Crown Cork & Seal Co.,* 905 F.2d 42, 45 (3d Cir.1990). Federal district courts have original jurisdiction over civil actions where there exists complete diversity of citizenship and an amount in controversy in excess of $50,-000, exclusive of interest and costs. 28 U.S.C. § 1332(a). Diversity jurisdiction requires complete diversity between all plaintiffs and all defendants. *Strawbridge v. Curtiss,* 3 Cranch (7 U.S.) 267, 2 L.Ed. 435 (1806); *see also, e.g., Development Fin. Corp. v. Alpha Hous. & Health Care, Inc.,* 54 F.3d 156, 158 (3d Cir.1995). In a class action

---

**2.** Count I of the complaint is a claim under Pennsylvania's Unfair Trade Practices and Consumer Protection Law, 73 Pa.Cons.Stat.Ann. §§ 201–2, 201–3, including a claim for attorneys' fees pursuant to 73 Pa.Cons.Stat.Ann. § 201–9.2(a). Neff Complaint ¶¶ 42–48. Count II is a claim for breach of express warranty. *Id.* ¶¶ 1–5, at pp. 18–19. Count III is a claim for breach of implied warranty. *Id.* ¶¶ 1–5, at pp. 19–21. Count IV is a claim for negligence and negligent misrepresentation. *Id.* ¶¶ 1–4, at pp. 21–22. Count V is a claim for fraud and deceit. *Id.* ¶¶ 1–6, at pp. 23–24. Inexplicably, Neff renumbered the paragraphs of each cause of action, beginning with the second.

**3.** There is no federal question claim pursuant to 28 U.S.C. § 1331 such that GM could remove under another provision. *Compare, e.g.,* 28 U.S.C. § 1441(b) (providing for removal of federal question cases); § 1441(d) (actions against foreign states); § 1442 (actions against federal officers); § 1442a (actions against members of the armed forces); § 1443 (civil rights cases); § 1444 (foreclosure suits against the United States); and, § 1452 (claims related to bankruptcy cases).

**4.** On July 3, 1995, Susan P. Marcel, D.O., the owner of a 1990 Chevrolet Lumina, also filed a putative class action in the Court of Common Pleas of Philadelphia County (which GM removed on July 27, 1995) on behalf of all owners and lessees of 1988–1993 GM W–Body cars. *Marcel v. General Motors Corp.,* Civil Action No. 95–4626. Because Marcel's and Neff's complaints were essentially identical, we held a joint Rule 16 pretrial conference on August 8, 1995 on both cases. Following the conference and with the consent of all the parties, we ordered the cases consolidated under the above caption. For convenience's sake, we shall refer only to Neff's pleadings unless there is a material difference between them, in which case we shall note the discrepancy.

Since the filings in this consolidated case, another putative class action with nearly identical allegations has been filed (not removed) and docketed as related to *Neff.* *Cohen v. General Motors Corp.,* Civil Action No. 95–6662. That case is not now before the Court.

founded upon diversity jurisdiction, however, a court looks only to the citizenship of the named parties. *Supreme Tribe of Ben Hur v. Cauble,* 255 U.S. 356, 41 S.Ct. 338, 65 L.Ed. 673 (1921); *In re School Asbestos Litig.,* 921 F.2d 1310, 1317–18 (3d Cir.1990), *cert. denied sub nom. U.S. Gypsum Co. v. Barnwell School Dist. No. 45,* 499 U.S. 976, 111 S.Ct. 1623, 113 L.Ed.2d 720 (1991). Since Neff and Marcel are citizens of the Commonwealth of Pennsylvania and GM is a Delaware corporation with its principal place of business in Michigan, Notice of Removal ¶¶ 3–4, the parties thus satisfy the complete diversity of citizenship element, and only the amount in controversy element remains at issue.

■ Since GM invoked our jurisdiction by removing this case, it bears the burden of demonstrating those facts that establish our jurisdiction. *McNutt v. General Motors Acceptance Corp. of Indiana, Inc.,* 298 U.S. 178, 189, 56 S.Ct. 780, 785, 80 L.Ed. 1135 (1936); *Columbia Gas Transmission Corp. v. Tarbuck,* 62 F.3d 538, 541 (3d Cir.1995); *Dukes v. U.S. Healthcare, Inc.,* 57 F.3d 350, 359 (3d Cir.1995), *petition for cert. filed,* 64 U.S.L.W. 3250 (U.S. Sept. 15, 1995) (No. 95–442). Because a lack of jurisdiction would void any judgment in this case and make the continuation of this litigation in federal court futile, the removal statute should be construed strictly and all doubts should be resolved in favor of remand. *Abels v. State Farm Fire & Casualty Co.,* 770 F.2d 26, 29 (3d Cir. 1985). Where a plaintiff and defendant clash about jurisdiction, uncertainties are to be resolved in favor of remand. *Boyer v. Snap-on Tools Corp.,* 913 F.2d 108, 111 (3d Cir. 1990), *cert. denied,* 498 U.S. 1085, 111 S.Ct. 959, 112 L.Ed.2d 1046 (1991).

■ A defendant's right to remove is determined according to allegations of the complaint at the time the defendant files the notice of removal. *Keene Corp. v. United States,* — U.S. —, —, 113 S.Ct. 2035, 2040, 124 L.Ed.2d 118 (1993) (citing cases); *Pullman Co. v. Jenkins,* 305 U.S. 534, 537, 59 S.Ct. 347, 348–49, 83 L.Ed. 334 (1939). As a general rule, the court must decide the amount in controversy from the complaint itself. *Angus v. Shiley, Inc.,* 989 F.2d 142, 145 (3d Cir.1993) (citing *Horton v. Liberty Mut. Ins. Co.,* 367 U.S. 348, 353, 81 S.Ct. 1570, 1573, 6 L.Ed.2d 890 (1961)).

■ Although Neff and Marcel do not seek specific amounts of damages in their complaints, each must have an amount in controversy that exceeds $50,000, and they are not permitted to aggregate their claims, even in a purported class action. *Snyder v. Harris,* 394 U.S. 332, 338, 89 S.Ct. 1053, 1057–58, 22 L.Ed.2d 319 (1969); *In re Corestates Trust Fee Litig.,* 39 F.3d 61, 64 (3d Cir.1994).

■ In a case originally filed in federal court, the over–$50,000 jurisdictional amount in controversy will be deemed satisfied unless it "appear[s] to a legal certainty" that a plaintiff's claim is for less. *St. Paul Mercury Indem. Co. v. Red Cab Co.,* 303 U.S. 283, 289, 58 S.Ct. 586, 590–91, 82 L.Ed. 845 (1938). In a case removed from state court, "there is a strong presumption that the plaintiff has not claimed a large amount in order to confer jurisdiction on a federal court or that the parties have colluded to that end. For if such were the purpose suit would not have been instituted in the first instance in the state but in the federal court." *Id.* at 290–91, 58 S.Ct. at 591 (footnote omitted).

This difference in the quoted language of *Red Cab* (if it is indeed a difference) has produced in the federal courts three different burdens of proof that a removing defendant must face when a plaintiff seeks an unspecified amount of damages in his state court complaint: (1) the defendant must prove, "to a legal certainty," that the plaintiff's claims are not less than the federal amount in controversy requirement; (2) the defendant must prove, "more likely than not," that the plaintiff's claims meet the amount in controversy requirement, and (3) the defendant must show that there is a "probability" or "some reasonable probability" that the amount in controversy has been met, or that the amount in controversy "may" or "could"

exceed the requirement, *Gafford v. General Elec. Co.,* 997 F.2d 150, 158 (6th Cir.1993) (summarizing these three approaches but adopting the second); *cf. Burns v. Windsor Ins. Co.,* 31 F.3d 1092, 1096 n. 6 (11th Cir. 1994) (noting the different standards courts apply when the amount of damages sought by plaintiff is unspecified). As a leading treatise counsels, "[w]hen the plaintiff fails to specify damages or specifies damages less than $50,000, the jurisdictionally sufficient amount, the defendant's burden for establishing jurisdiction for the purpose of removal varies according to the court." 14A Charles Alan Wright, Arthur R. Miller, Edward H. Cooper, *Federal Practice and Procedure* § 3725, at 165 (Supp.1995). Our Circuit has not recognized this divergence in standards when damages are unspecified, nor does it appear that it has authoritatively settled on one of its own.[5] Because it seems clear to us that damages in this action do not approach the $50,000 threshold, GM cannot meet its burden even under the most lenient standard.

### A. *Calculation of Damages*

The parties agree on the calculation of plaintiffs' compensatory damages. The supplemental briefing reveals that Neff has spent $173.69 and Marcel has expended $1,132.04 for repairs to their cars related to the allegedly defective rear disc brake caliper pins. Pl.Supp.Mem.Exh. A, ¶ 1(b); Def't.Supp.Mem.Exh. A. ¶ 1(b). Neff also contends that her Buick Regal has lost between $2,206.25 and $3,530 in value due to the alleged defect. *Id.* ¶ 1(f). Similarly, Marcel claims that her Chevrolet Lumina lost between $1,387.50 and $2,220 in value for the alleged defect. *Id.* Thus, Neff has allegedly sustained between $2,379.94 and $3,703.69 in damages and Marcel has experienced between $2,519.54 and $3,352.04 in

damages caused by the brake defect. *Id.* ¶ 1(e).

Count I of plaintiffs' complaints specifically include a claim for attorneys' fees under Pennsylvania's Unfair Trade Practices and Consumer Protection Law ("UTPCPL"), which provides that:

> Any person who purchases or leases goods or services primarily for personal, family or household purposes and thereby suffers any ascertainable loss of money or property, real or personal, as a result of the use or employment by any person of a method, act or practice declared unlawful by section 3 of this act, may bring a private action, to recover actual damages or one hundred dollars ($100), whichever is greater. The court may, in its discretion, award up to three times the actual damages sustained, but not less than one hundred dollars ($100), and may provide such additional relief as it deems necessary or proper.

73 Pa.Cons.Stat.Ann. § 201–9.2(a) (Purdon's 1993). This section provides a private remedy for all violations of § 3 of the UTPCPL that might otherwise escape remedy because they do not affect the public interest and therefore would not be subject to enforcement by the Attorney General under § 4 of the act. *In re Smith,* 866 F.2d 576, 583 (3d Cir.1989).

By its terms, the UTPCPL explicitly vests discretion with the court to award treble damages. We note, however, that other courts have declined to exercise this discretion.[6] Assuming that we would decide to exercise our discretion to treble plaintiffs' damages, Neff's total compensatory damages would be between $7,139.92 and $11,111.07 and Marcel's total claim would be between

---

5. When the complaint fails to specify damages, our Court of Appeals has merely held that the district court should "ma[ke] an independent appraisal of the value of the claim." *Angus,* 989 F.2d at 146.

6. *McClelland v. Hyundai Motor America,* 851 F.Supp. 680, 681 (E.D.Pa.1994) (citing *Gambrill v. Alfa Romeo, Inc.,* 696 F.Supp. 1047, 1050 (E.D.Pa.1988), *aff'd without op.* 877 F.2d 54 (3d Cir.1989)); *Perez v. Anderson,* 98 B.R. 189, 191 (E.D.Pa.1989); *In re Milbourne,* 108 B.R. 522, 544 (Bankr.E.D.Pa.1989); *In re Clark,* 96 B.R. 569, 583 (Bankr.E.D.Pa.1989) (refusing to treble non-economic damages); *In re Wernly,* 91 B.R. 702, 705 (Bankr.E.D.Pa.1988).

$7,558.62 and $10,056.12, well under the jurisdictional threshold.[7]

## B. *Attorneys' Fees*

GM contends that plaintiffs' claim for attorneys' fees under the UTPCPL elevates the amount in controversy to something over $50,000. Unlike other Pennsylvania statutes governing fair trade practices, the UTPCPL does not explicitly award attorneys' fees to the prevailing party.[8] Nevertheless, several courts, primarily federal courts exercising their diversity jurisdiction (as well as bankruptcy courts), have held that the broad language of § 201–9.2(a) authorizing "such additional relief as [the court] deems necessary or proper" permits a court to award attorneys' fees to a prevailing plaintiff.[9] Furthermore, we have found no cases that have held that attorneys' fees are *not* available under this statute. Therefore, we shall follow the line of cases that holds that § 9.2(a) authorizes a court to award attorneys' fees.

 Because plaintiffs make an explicit claim for attorneys' fees under the UTPCPL, we must include this in our calculation of the amount in controversy:

> The law is now quite settled that attorney's fees are a part of the matter in controversy when they are provided for by contract or by state statute; but only a reasonable attorney's fee may be included.... When the applicable substantive law makes the award of an attorney's fee discretionary, a

claim that this discretion should be exercised in favor of plaintiff makes the requested fee part of the amount in controversy.

14A Charles Alan Wright, Arthur R. Miller, Edward H. Cooper, *Federal Practice and Procedure* § 3712, at 176–78 (1985) (footnotes omitted).

Even considering plaintiffs' claims for attorneys' fees, however, does not raise the amount in this controversy to over $50,000. As our Court of Appeals has cautioned, "when it appears that such a claim [for punitive damages] comprises the bulk of the amount in controversy and may have been colorably asserted solely or primarily for the purpose of conferring jurisdiction, that claim should be given particularly close scrutiny." *Packard v. Provident Nat'l Bank,* 994 F.2d 1039, 1046 (3d Cir.), *cert. denied,* —— U.S. ——, 114 S.Ct. 440, 126 L.Ed.2d 373 (1993). The reasoning underlying this rule is that a party should not be permitted to shoehorn what is in truth a local action into federal court through extravagant punitive damage claims that are permitted only by virtue of the federal system's liberal pleading rules. *Kahal v. J.W. Wilson & Assocs., Inc.,* 673 F.2d 547, 549 (D.C.Cir.1982). We think this logic applies with equal force to a claim for attorneys' fees.

The parties agree that the named plaintiffs suffered actual damages of, at most, $3,703.69 and $3,352.04 each. Although we have the discretion under the UTPCPL to

---

7. To help make our arithmetic a bit clearer:

| | | Neff | | | Marcel | | |
|----------|---|------------|----|-----------|----------|----|-----------|
| repairs | : | $ 173.69 | | | $ 1132.04| | |
| + diminution | : | 2,206.25 | to | 3,530.00 | 1,387.50 | to | 2,220.00 |
| = subtotal × 3 | : | 2,379.94 | to | 3,703.69 | 2,519.54 | to | 3,352.04 |
| = total | : | 7,139.82 | to | 11,111.07 | 7,558.62 | to | 10,056.12 |

8. *Compare* UTPCPL, 73 Pa.Cons.Stat.Ann. § 201–9.2(a) ("The court ... *may* provide such additional relief as it deems necessary or proper.") *with* Cash Consumer Protection Act, 73 Pa.Cons.Stat.Ann. § 204–9(a) ("The court *shall* award reasonable attorney's fees to a person who prevails in an action brought pursuant to this subsection.") (emphasis added).

9. *See Hammer v. Nikol,* 659 A.2d 617, 620 (Pa. Commw.1995); *see also Jones v. General Motors Corp.,* No. 90–7816, 1991 WL 59902, *1 (E.D.Pa.

1991); *Wylie v. Acorn Plumbing & Heating, Inc. (In re Wylie),* No. 91–0013, 1991 WL 42236, *6 (E.D.Pa.1991); *Bryant v. Woodland (In re Bryant),* 111 B.R. 474, 480 (E.D.Pa.1990); *Carey v. Geller,* No. 89–0951, 1989 WL 153941, *1 (E.D.Pa.1989); *Jungkurth v. Eastern Fin. Serv., Inc.,* 87 B.R. 333, 336 (E.D.Pa.1988); *Fricker v. First Penn. Bank, N.A. (In re Fricker),* 113 B.R. 856, 872 (Bankr.E.D.Pa.1990); *Stewart v. Credithrift of Am. Consumer Discount Co. (In re Stewart),* 93 B.R. 878, 889 (Bankr.E.D.Pa.1988); *Andrews v. Fleet Real Estate Funding Corp. (In re Andrews),* 78 B.R. 78, 85 (Bankr.E.D.Pa.1987).

treble these damages, neither the statute nor case law requires us to do so. Even if we chose to treble plaintiffs' actual damages, however, GM can only justify our jurisdiction by claiming that plaintiffs are each entitled to about $40,000 in attorneys' fees. GM states, without any proof, that "[g]iven the nature of plaintiffs' claims, substantial discovery, motion practice and trial preparation will be needed, regardless of whether a class is certified. The fees of plaintiffs' numerous counsel will substantially exceed the jurisdictional amount, assuming that they have not done so already, even without considering the compensatory and treble damages prayed for." Def't Mem. in Opposition to Mtn. to Remand at 7–8. We disagree.

It is hard to conceive how a $10,000 claim, already statutorily trebled, could support a reasonable attorneys' fee of $40,000. *Lerch v. Maryland Ins. Group*, No. 94–5592, 1995 WL 30594, *3 (E.D.Pa.1995) (holding to a legal certainty that the Court would not award $25,000 in attorneys' fees on a $13,500 claim). As GM has reminded us at several junctures, only the named plaintiffs are now before the Court, and this is not a class action, but only a putative one.[10] Therefore, we need not consider the attorneys' fees that might be incurred in the inevitable dispute over class certification.

Perhaps most important in our computation of the jurisdictional amount, however, is that the statute empowers the Court to set attorneys' fees in the event that plaintiffs prevailed. Given this legal reality, we can say to a certainty that we would never award in attorney fees an amount that is over thirteen times the amount of actual damages or four times the amount of statutorily (and hypothetically) trebled damages. To do so

would be to reward overlawyering of the case. To do so could thus not be "necessary or proper".

We are fortified in this conclusion by the recognition that there are here no important constitutional rights to be vindicated that could justify a substantial attorneys' fee award even though the plaintiffs recovered nominal money damages. *Cf. Farrar v. Hobby*, 506 U.S. 103, 113 S.Ct. 566, 121 L.Ed.2d 494 (1992) (holding that civil rights plaintiff who receives nominal damages is prevailing party, although not entitled to attorneys' fee award under 42 U.S.C. § 1988). Nor is there is any claim for personal injury. Neff Complaint ¶ 2 ("Plaintiff and the class do not seek damages for personal injuries suffered by class members."). This is merely a case about allegedly defective automobile brakes, nothing more.

We therefore hold that any potential award of attorneys' fees could not make the amount in controversy exceed $50,000.[11]

### III. *Conclusion*

Because Marcel and Neff cannot satisfy the jurisdictional amount in controversy, we do not have subject matter jurisdiction over their claims and must remand this case to the Court of Common Pleas. *See* 28 U.S.C. § 1447(c) ("If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded.").

---

10. *See* Def't Mem. in Opposition to Mtn. to Remand at 5 ("This case is not now a class action, and may never be one.") (citing *Baxter v. Palmigiano*, 425 U.S. 308, 311 n. 1, 96 S.Ct. 1551, 1554 n. 1, 47 L.Ed.2d 810 (1976); *Board of School Comm'rs of City of Indianapolis v. Jacobs*, 420 U.S. 128, 129, 95 S.Ct. 848, 849–50, 43 L.Ed.2d 74 (1975); *Shelton v. Pargo, Inc.*, 582 F.2d 1298, 1303 (4th Cir.1978)). *See also*, Def't Supp.Mem. at 2 ("Only plaintiffs Neff and Marcel are currently before this Court. Jurisdiction over plaintiffs' claims, accordingly, is to be evaluated as in an individual action.") (citations omitted).

11. Given this holding, we need not reach GM's argument that we have supplemental jurisdiction over the unnamed members of the class, even if they do not satisfy the amount in controversy. *See* Notice of Removal ¶ 9 (citing *In re Abbott Labs.*, 51 F.3d 524 (5th Cir.1995) for the proposition that the Judicial Improvement Acts of 1990, 28 U.S.C. § 1367, *sub silentio* overruled *Zahn v. Int'l Paper Co.*, 414 U.S. 291, 94 S.Ct. 505, 38 L.Ed.2d 511 (1973)).

We note in passing that our Circuit is aware of this argument, but has not had occasion yet to rule on the current vitality of *Zahn. Packard*, 994 F.2d at 1045 n. 9.