Peter R. BISHOP, Plaintiff,

v.

GENERAL MOTORS CORP., Defendant.

Civil No. 95–04794.

United States District Court,
D. New Jersey.

April 29, 1996.

Daniel Gsovski, Herzfeld & Rubin, New York City, Lawrence Lavigne, Hanlon Lavigne Topchik, Edison, NJ, for defendant.

Peter Masnik, Kalikman & Masnik, Haddonfield, NJ, Robert G. Eisler, Mager Liebenberg & White, Philadelphia, PA, for plaintiff.

## OPINION

IRENAS, District Judge:

Plaintiff Peter Bishop moves to remand his complaint to the state court from which it was removed by defendant General Motors. Because we hold that Bishop's claim does not meet the amount in controversy required to establish federal subject matter jurisdiction, and because we decline to treat attorneys' fees or highly speculative punitive damages as aggregable for purposes of meeting the amount in controversy, plaintiff's motion to remand will be granted.

## I. BACKGROUND

Defendant General Motors ("GM") is the manufacturer of the Chevrolet Lumina, Buick Regal, Oldsmobile Cutlass Supreme and Pontiac Grand Prix. These automobiles are known collectively as the "GM W–Body Car" and are built on the same GM platform. This putative class action involves the owners and lessees of the GM W–Body cars for the model years 1988 to 1993. Plaintiff Peter Bishop owns a 1992 Oldsmobile Cutlass Supreme.

The GM W-body cars are outfitted with brakes that were designed and manufactured by Delphi Chassis Systems, a division of GM. Plaintiff contends that the brakes of the GM W-body cars are defective, that GM was aware of this defect prior to marketing the cars or shortly thereafter, and that GM failed to disclose this fact to present and future owners of the GM W-body cars. Plaintiff contends that he and the other purported members of his class have suffered economic harm as a result of having to pay for repairs or due to the diminution in the value of their cars because of public disclosure of the defect. Plaintiff does not assert that he or any other class member has been injured as a result of the brakes' defect.

## II. DISCUSSION

■ An action removed to federal court may be remanded to state court if the district court lacks subject matter jurisdiction. 28 U.S.C. § 1447(c). When confronted with a motion to remand, the removing party has the burden of establishing the propriety of removal. *Boyer v. Snap–On Tools Corp.*, 913 F.2d 108, 111 (3d Cir.1990), *cert. denied*, 498 U.S. 1085, 111 S.Ct. 959, 112 L.Ed.2d 1046 (1991). All doubts must be resolved in favor of remand. *Boyer*, 913 F.2d at 111. Jurisdiction in this case is based on diversity under 28 U.S.C. § 1332(a)(1). Diversity jurisdiction is proper only where the amount in controversy exceeds the sum of $50,000. 28 U.S.C. § 1332(a)(1). The calculation of the amount in controversy lies at the heart of the present motion.

### 1. *Aggregating Common Interests*

■ In *Snyder v. Harris*, 394 U.S. 332, 89 S.Ct. 1053, 22 L.Ed.2d 319 (1969), the Supreme Court held that in federal diversity actions a class plaintiff cannot aggregate the claims of all class members to satisfy the jurisdictional amount in controversy. *Id.* at 335, 89 S.Ct. at 1056. However, the Court recognized an exception to this general rule where "two or more plaintiffs unite to enforce a single title or right in which they have a common and undivided interest...." *Id.* Defendant asserts that the claims of all class members for punitive damages are common and undivided and should be aggregated in calculating the amount in controversy.

Distinguishing between claims characterized as separate and distinct and those which are common and undivided has proved difficult. Cases in which the courts have applied the "common and undivided interest" rule to permit aggregation include: an action by the holders of two notes, both secured by the same lien, who were suing to assert that lien; a wrongful death action for the benefit of all surviving beneficiaries; an action by the distributees of an estate against one alleged to have converted estate assets; an action by a debtor and his creditors seeking to collect the proceeds of a fire insurance policy; and an action by an Indian tribe to quiet title to a tract of land. *See* 14A Charles A. Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice and Procedure*, § 3704 (2d ed. 1985).

More recently the Eleventh Circuit held in *Tapscott v. MS Dealer Service Corp.*, 77 F.3d 1353 (11th Cir.1996), that in a class action

suit against a seller of automobile service contracts the plaintiffs possessed a "common and undivided" interest in their punitive damage claims, which may therefore be aggregated for purposes of meeting the amount in controversy. *Id.* at 1358; *see also Allen v. R & H Oil and Gas Co.*, 63 F.3d 1326 (5th Cir.1995) (aggregating punitive damages in a joint (non-class action) mass tort claim); *Berman v. Narragansett Racing Assn.*, 414 F.2d 311 (1st Cir.1969) (aggregating a compensatory damage common fund). The *Tapscott* court reached its conclusion for four reasons: (1) "punitive damages reflect the defendant's course of conduct towards all of the putative class members"; (2) punitive damages are a "single collective right in which the putative class has a common and undivided interest; the failure of one plaintiff's claim will increase the share of successful plaintiffs"; (3) punitive damages are a "public good," their purpose being to protect society by punishing and deterring wrongful conduct; and (4) the defendant is not concerned with the distribution of the award among the plaintiffs. *Id.* at 1359.

We believe that *Tapscott* represents an unwarranted and ill-considered extension of the doctrine of "common and undivided interest" to highly speculative punitive damages claims. The paradigm cases of "common and undivided interest" set forth *supra* are those which involve a single indivisible *res*, such as an estate, a piece of property (the classic example), or an insurance policy. These are matters that cannot be adjudicated without implicating the rights of everyone involved with the *res*. This is not true of punitive damages. Individual plaintiffs can sue separately for punitive damages, and, whether they prevail on the merits or not, whether they are awarded punitive damages or not, the rights of subsequent plaintiffs remain unaffected. Indeed, one of the many cogent criticisms of punitive damages is that multiple punitive liability can both bankrupt a defendant and preclude recovery for tardy plaintiffs. *See e.g.,* Dan B. Dobbs, *Law of Remedies,* § 3.11(8), p. 501 (2d ed. 1993).

■ The potential plaintiffs' claims for punitive damages in this case are thus not a "single right"; rather, they are separate and distinct, to be brought together in a class action only for the convenience of the plaintiffs.[1] The test for aggregation is not the defendant's interest, in our view, but whether the plaintiffs' interests are inextricably intertwined.

■ In cases which do find a "common and undivided interest" the *res* is generally clearly defined. When dealing with a piece of property, an insurance policy, or an estate, a court can be reasonably confident of its value for jurisdictional purposes. But punitive damages are frequently little more than a lawyer's fantasy. A precise amount is impossible to ascertain at the pleading stage. Such damages are very easy to plead and, given the large number of plaintiffs in many class actions, under the *Tapscott* rule the federal courts would have jurisdiction over any sizeable diversity class action with a colorable malice claim.[2] Such a result direct-

---

1. In addition, the individual class members' rights to punitive damages may vary in this case. For example, GM's potential liability to plaintiffs who purchased their cars before GM became aware of the defect might differ from its potential liability to plaintiffs who purchased afterwards. The *Tapscott* court itself noted that, in cases where punitive damages hinged on "individualized consideration of the egregiousness of the harm done to individual class members" aggregation might be inappropriate. 77 F.3d at 1359, n. 13.

It is not even clear that plaintiffs have a viable cause of action under the Consumer Fraud Act or under New Jersey common law legal fraud. These laws are aimed at prohibiting misrepresentations upon which others rely. *See* N.J.S.A. 56:8–1.1; *Foont–Freedenfeld Corp. v. Electro–Protective Corp.*, 126 N.J.Super. 254, 257, 314 A.2d 69 (A.D.1973) (setting forth elements of legal fraud). In this case, plaintiffs appear to allege primarily that GM concealed its knowledge of the brakes' defects from customers who had already purchased the cars and who could not, therefore, have relied upon the representations. It is possible, however, to construe the complaint as suggesting that GM continued to sell cars to consumers after it had learned of the defect, thereby implicitly representing, falsely, that the brakes were good. Because of the factual uncertainty that pervades this early stage of litigation, we will assume for purposes of valuing the amount in controversy that plaintiff has a colorable claim for punitive damages.

2. For example, Bishop asserts approximately three million class members. Complaint ¶7. Assuming that each class member is awarded

ly contravenes the purpose behind the amount in controversy requirement, which is to limit the federal docket to substantial cases.

██ Finally, we believe it is inconsistent to permit the aggregation of punitive damages to meet the jurisdictional minimum when the Third Circuit has held explicitly that attorneys' fees may not be aggregated to meet the jurisdictional minimum,[3] and where it has long been the law that compensatory damages may not be aggregated.[4]

### 2. The Named Plaintiff

#### a. Compensatory Damages

In *Zahn v. International Paper Co.*, 414 U.S. 291, 94 S.Ct. 505, 38 L.Ed.2d 511 (1973), the Supreme Court held that multiple plaintiffs with separate and distinct claims, as we have found in the case at bar, must *each* satisfy the amount in controversy requirement. *Id.* at 301, 94 S.Ct. at 511. There is some question as to whether *Zahn* is still good law after Congress created supplemental jurisdiction in the Judicial Improvements Act of 1990, 28 U.S.C. § 1367. In *In re Abbott Laboratories*, 51 F.3d 524 (5th Cir. 1995), the Fifth Circuit held that the jurisdic-

tional amount in controversy need be established *only* by the named plaintiffs, and that supplemental jurisdiction will then follow over unnamed plaintiffs who do not meet the amount in controversy requirement. *Id.* at 526–529. The Third Circuit has declined to rule on this issue. *Packard v. Provident Nat. Bank*, 994 F.2d 1039, 1045 n. 9 (3d Cir.1993).

██ Whether *Zahn* continues to require that the jurisdictional amount be established by each and every class member is thus not clear in this Circuit. Nonetheless, even those courts which have declined to apply *Zahn* in its strictest sense have required that the named plaintiff meet the jurisdictional amount. *In re Abbott Laboratories*, 51 F.3d 524 (5th Cir.1995); *Neff v. General Motors Corp.*, 163 F.R.D. 478 (E.D.Pa.1995).[5]

██ The Third Circuit has held that, where a complaint does not request a precise monetary amount, the district court must make an independent inquiry into the value of the claims alleged. *Angus v. Shiley, Inc.*, 989 F.2d 142, 146 (3d Cir.1993). The amount in controversy should be measured "by a

---

$15,000 as treble damages under the Consumer Fraud Act, punitive damages would need to be only $35,000.01, or $0.0167 per class member ($35,000.01 divided by three million class members). It is often difficult for a judge to say with certainty at the pleadings stage that a claim could not result in $0.0167 in punitive damages for each plaintiff. (This calculation does not include attorneys' fees, which, of course, would also be included in reaching the jurisdictional amount.)

3. *Spellman v. Meridian Bank*, —— F.3d ——, ——–——, 1995 WL 764548 at *9–10 (3d Cir. (Pa.), Dec. 29, 1995); opinion amended by *Spellman v. Meridian Bank*, —— F.3d ——, 1996 WL 20762 (3d Cir. (Pa.), Jan. 12, 1996); rehearing en banc granted, opinion vacated (Feb. 16, 1996). Although *Spellman* has been vacated and set for rehearing, we believe that its reasoning with respect to attorneys' fees and punitive damages is cogent and likely to survive the rehearing. We therefore rely on *Spellman* in this opinion as persuasive authority.

4. *Snyder*, 394 U.S. at 332, 89 S.Ct. at 1053.

5. The *Neff* court took the approach of considering the claims of the named plaintiffs, as do we,

and found that the named plaintiffs could not reach the amount in controversy, as do we. An alternative approach was advocated by Judge Lechner in *Garcia v. General Motors*, 910 F.Supp. 160 (D.N.J.1995). Judge Lechner held that *Zahn* is alive and well and that, therefore, *each* plaintiff must meet the jurisdictional minimum. Dividing the potential award by the three million members of the putative class, Judge Lechner demonstrated mathematically that it was highly unlikely that each plaintiff would have a $50,000 claim, even including punitive damages and attorneys' fees. Op. at 167. Assuming that *Zahn* applies (and that *Tapscott* does not), Judge Lechner's analysis would dictate the same result in our case.

As we will show, the named plaintiff does not meet the amount in controversy in this case, and so we need not reach the *Abbott Laboratories* issue of supplemental jurisdiction over the unnamed class members. In any event, the *"Zahn* question" is really a false issue in this case. Because Bishop's claim is comparable to that of every other class member, and because we will value attorneys' fees and punitive damages on a pro rata basis, our analysis of Bishop's claim as the named class representative is similar to a full-fledged *Zahn* analysis such as that of Judge Lechner in *Garcia*.

reasonable reading of the value of the rights being litigated." *Id.*[6]

A reasonable reading of the value of Bishop's claim compels the conclusion that it is worth less than $50,000. Depending on the particular model, a 1992 Oldsmobile Cutlass Supreme has a (loan) value ranging from $7,075 to $12,200, according to the *N.A.D.A. Official Used Car Guide*, April 1996. We will assume that the value of the car has been reduced by $5,000 due to the cost of repairs and the diminution in value arising from public disclosure of the defect.[7] Tripling this figure under the Consumer Fraud Act, N.J.S.A. 56:8–19, provides a total award of only $15,000.

b. *Attorneys' Fees and Punitive Damages*

Defendant argues that the $35,000.01 difference can be made up by a combination of attorneys' fees and punitive damages. The Third Circuit has insisted that courts look critically at claims where punitive damages or attorneys' fees constitute the bulk of the amount in controversy. *Spellman v. Meridian Bank,* —— F.3d ——, ——, 1995 WL 764548, at *9 (3d Cir. Dec. 29, 1995).

A trial judge has broad discretion with respect to setting both attorneys' fees and punitive damages. *Cox v. Sears Roebuck & Co.,* 138 N.J. 2, 24, 647 A.2d 454 (1994) (remanding to trial judge to calculate appropriate and *reasonable* attorneys' fees); *Security Alum. Wind. Mfg. Corp. v. Lehman Assoc., Inc.,* 108 N.J.Super. 137, 260 A.2d 248 (A.D.1970) (punitive damages); W. PAGE KEETON ET AL., PROSSER AND KEETON ON THE LAW OF TORTS § 2, at 14 (5th ed. 1984) ("it is always within the discretion of the jury or trial judge to withhold [punitive damages]"). No conceivable exercise of this discretion would result in punitive damages and attorneys' fees that would exceed the $35,000.01 required to meet the jurisdictional minimum.

With respect to attorneys' fees Judge Dalzell held, in a case with the same underlying facts, that attorneys' fees could not rise to the level required to meet the jurisdictional amount. *Neff v. General Motors Corp.,* 163 F.R.D. 478 (E.D.Pa.1995) (commended by the Third Circuit in *Spellman v. Meridian Bank,* —— F.3d ——, ——, 1995 WL 764548 at *10 (3d Cir. Dec. 29, 1995) for its "excellent discussion of the removal issue"). "To do so," explained Judge Dalzell, "would be to reward overlawyering of the case." *Id.* at 484. As Judge Dalzell sensibly remarked, "[t]his is merely a case about allegedly defective automotive brakes, nothing more." *Id.*

In determining how to calculate the attorneys' fees attributable to Bishop, we must first consider whether to analyze such fees in terms of a class action or as an individual suit brought by plaintiff in his own behalf. Judge Dalzell's analysis in *Neff* seems to have implicitly assumed the latter. *Id.* at 484. However, in *Spellman,* which was decided after *Neff,* the Third Circuit held that in calculating the amount in controversy in a putative class action "attorneys' fees must be distributed across the class or across the claimants." *Id.* at —— at *9. Bishop is entitled only to his pro rata share of attorneys' fees as a class member, an insignificant number in a class numbering over 3,000,000.

The same reasoning may also be applied to the issue of punitive damages. Under the New Jersey Consumer Fraud Act an award of treble damages is mandatory if plaintiff proves both an unlawful practice under the Act and a resulting ascertainable loss. N.J.S.A. 56:8–19; *Cox v. Sears Roebuck & Co.,* 138 N.J. 2, 647 A.2d 454 (1994).

---

**6.** Although other Circuits have agonized over the precise burden of proof required to estimate the amount in controversy and who carries it, *see Neff,* 163 F.R.D. at 481, the Third Circuit has, perhaps wisely, retained this more general formula.

**7.** In *Neff,* the plaintiffs alleged between $2,206 and $3,704 in damages on the same underlying facts. 163 F.R.D. at 482. Although in *Cohen v. General Motors Corp.,* Civil No. 95–6662, 1996 WL 15737 (E.D.Pa. January 12, 1996), another plaintiff asserted damages of $10,170 on the basis of the same underlying facts as in this case and *Neff,* Judge Dalzell scoffed at this sum (slip op. at 5, 1996 WL 15737, at *2), and we share his skepticism. At oral argument, plaintiffs conceded that $5,000 represents a fairly accurate estimation of Bishop's actual damages. We think it is more than generous.

Although the treble damages award already contains a substantial punitive component beyond the amount needed to compensate for actual harm, *Neveroski v. Blair,* 141 N.J.Super. 365, 358 A.2d 473, 482 (A.D.1976), such an award may not bar plaintiff from receiving additional common law punitive damages. *Wildstein v. Tru Motors, Inc.,* 227 N.J.Super. 331, 335, 547 A.2d 340 (L.D.1988).

■ As with attorneys' fees, Bishop's claim for punitive damages may be valued either (i) from the perspective of an individual plaintiff suing on his own behalf or (ii) based on Bishop's potential recovery as a class member. Although not expressed in so many words, GM would have us consider Bishop as an individual litigant. Under this approach, we would evaluate Bishop's claim independently and determine whether punitive damages could rise to $35,000.01 (or less, after deducting attorneys' fees) were he an individual plaintiff. GM's enormous net worth, a factor that must be considered by a New Jersey jury in awarding punitive damages,[8] the absence of a requirement that punitive damages be proportionate to compensatory damages,[9] and the probability that legal fees in the context of an individual suit would total many thousands of dollars, make the $50,000 threshold seem possible, if still highly improbable.

■ We hold, however, that the better approach is to allocate to Bishop for jurisdictional purposes only his individual share as a class member of a single punitive damage award. Bishop would be required to establish a pro rata share of punitive damages equal to $35,000.01. Assuming that Bishop's pro rata share of punitive damages is comparable to that of the other class members, the total punitive damages award in this case would have to be $105,000,030,000.00. (Three million multiplied by $35,000.01.) Notwithstanding GM's size, such an award would be patently absurd and legally unsustainable.

■ We have chosen to value Bishop's punitive damages on a pro rata basis. Although Bishop might have gained a larger award by proceeding independently, as he would be entitled to keep any punitive damages award for himself, he has chosen for other reasons to proceed as a class representative. Therefore, the "reasonable value" of his award is what he would receive if he prevailed in the present litigation. Because the present litigation is in fact a putative class action,[10] any award that Bishop might receive would necessarily have to be divided among the three million class members.

*Spellman*'s reasoning with respect to attorneys' fees is also instructive. Judge Roth held that "attorneys' fees must be distributed across the class" rather than being credited entirely to the jurisdictional account of the named plaintiff. *Spellman,* — F.3d at —, 1995 WL 764548, at *9. (The Fifth Circuit reached the opposite conclusion in *Abbott Laboratories,* 51 F.3d at 526, which was cited but apparently rejected by the *Spellman* court.) Other than the *Tapscott* reasoning, which we have already rejected, we can see no reason why punitive damages should be treated differently from attorneys' fees in this respect.

## III. CONCLUSION

The reasoning set forth in the Eleventh Circuit's recent decision in *Tapscott* presents the only new argument for jurisdiction over a case which is similar to those dispatched to state court by other judges in this Circuit.[11]

---

8. *See, e.g., Herman v. Sunshine Chemical Specialties,* 133 N.J. 329, 338, 627 A.2d 1081, 1086 (1993).

9. *See, e.g., Leimgruber v. Claridge Associates,* 73 N.J. 450, 456, 375 A.2d 652 (1977).

10. *See Spellman,* — F.3d —, — 1995 WL 764548, at *7 ("despite the absence of certification, class action principles still apply").

11. *See, e.g., Weinberg v. Sprint Corp.,* 165 F.R.D. 431, 437 (D.N.J.1996) (Pisano, J.); *Garcia,* 910 F.Supp. at 166; *Hamel v. Allstate Indemnity Co.,* 1996 WL 106120 (E.D.Pa.1996); *Neff,* 163 F.R.D. at 478; *Cohen v. General Motors Corp.,* Civil No. 95–6662, 1996 WL 15737 (E.D.Pa. 1996).

Only one case in the Third Circuit has even offhandedly suggested that punitive damages may be aggregated for jurisdictional purposes. *In re General Motors Corporation Pickup Truck Fuel Tank Products,* 1993 WL 147245, at *2, n. 1 (E.D.Pa.), Judge Yohn wrote, in what is clearly dicta, that punitive damages "could possibly" be aggregated to reach the jurisdictional amount. Every other case in this Circuit that has ad-

**302**

As we explained earlier, however, we are not convinced that the reasoning of *Tapscott* with respect to treating punitive damages as "common and undivided" is sound, or that either the Third Circuit or the Supreme Court is likely to adopt it.

Moreover, we are reluctant to embrace a novel theory of jurisdiction absent clear guidance from the Third Circuit or the Supreme Court. To do so would be to risk infecting the case with reversible error that might taint it all the way to the Supreme Court. While GM might not find this prospect unappealing, it is distinctly distasteful to the plaintiffs and the Court. We have the utmost confidence that the New Jersey courts will provide GM with a fair hearing, the result of which will not be subject to challenge on jurisdictional grounds.

 Defendant has requested that we certify any decision of remand to the Third Circuit pursuant to 28 U.S.C. § 1292(b), which states that a district judge may, when faced with a controversial issue of law whose resolution will advance the litigation, certify an interlocutory appeal to "the Court of Appeals which would have jurisdiction of an appeal of such action." Under 28 U.S.C. § 1447(d), "an order remanding a case to the State court from which it was removed is not reviewable on appeal or otherwise." The Third Circuit therefore does not have jurisdiction to hear an appeal, and we do not have the power to certify an interlocutory appeal. *In re Bear River Drainage Dist.*, 267 F.2d 849 (10th Cir.1959); *see also* 14A Charles A. Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice and Procedure*, § 3740 (2d ed. 1985).

We hold that Peter Bishop cannot meet the amount in controversy requirement for subject matter jurisdiction, and we decline to follow *Tapscott*'s ill-founded argument that punitive damages may be treated as a "common and undivided interest." In accordance with *Boyer*'s directive that "all doubts should be resolved in favor of remand," 913 F.2d at 111, we will therefore, pursuant to 28 U.S.C. § 1447(c), grant plaintiff's motion to remand

to the Superior Court of New Jersey, Burlington County, Law Division.

---

dressed the issue has declined to follow the reasoning represented by *Tapscott*. Indeed, Judge Brotman rejected the *Tapscott* logic in an unpublished opinion issued the day before we held oral

argument in this case. *Corry v. Intel Corp*, Civil Action No. 96–00874, 1996 WL 338381 (D.N.J. April 24, 1996).