**Earl COWAN, Plaintiff,**

v.

**Kendal WINDEYER and Dorothy Windeyer, Defendants.**

**No. 92–CV–164.**

United States District Court,
N.D. New York.

June 17, 1992.

Alexander Lesyk, Chateaugay, N.Y., for plaintiff.

Hinman Straub Pigors & Manning, Albany, N.Y. (John D'Andrea, of counsel) and Burak & Anderson, Pro Hac Vice, for Bur-

lington, Vt. (David Hyman, of counsel), for defendants.

## MEMORANDUM–DECISION AND ORDER

McCURN, Chief Judge.

Plaintiff commenced this suit on December 24, 1991 in New York State Supreme Court, Franklin County, seeking a prescriptive easement or an easement by necessity through defendants' land in Chateaugay, New York. Defendants removed the case to this court pursuant to 28 U.S.C. § 1332(a)(2) (1988 & West Supp.1992) (diversity of citizenship). Plaintiff asserts that the removal was improper because this court lacks jurisdiction, and thus moves to remand the case to state supreme court pursuant to 28 U.S.C. § 1447(c) (1988).[1] For the reasons stated herein, plaintiff's motion to remand is granted.

## I. BACKGROUND

In 1961, plaintiff Earl Cowan purchased a parcel of property in Chateaugay, New York, which is located at the northern-most point of this district, on the Canadian boarder.[2] A town road called Rhinehart Road provided the sole route for ingress to and egress from the property. On May 11, 1981, the Town of Chateaugay abandoned Rhinehart Road, thus leaving plaintiff with no conventional avenue to his property.

Despite the abandonment, plaintiff continued to use the former roadway to access his property. To facilitate its use, he allegedly maintained its condition by grading it, filling it, clearing it, and generally using it as access to his otherwise inaccessible parcel. Plaintiff's unfettered use of the road allegedly continued even after defendants Kendal and Dorothy Windeyer purchased a parcel adjacent to plaintiff's land in 1989. The Windeyer's purchase was significant

because the abandoned Rhinehart Road passed through their new parcel.

In April, 1991, plaintiff allegedly notified the Windeyers of his intent to sell his parcel and offered them an opportunity to purchase it. The Windeyers not only declined the offer but, fearing diminished property value through increased traffic on the abandoned roadway, threatened to prevent any sale of the property. In furtherance of their threat, the Windeyers obstructed portions of the road with various debris so as to deny access to the property, thereby forewarning potential buyers that the property would be inaccessible via the former Rhinehart Road. The Windeyers also informed plaintiff of their plan to build a stone wall across the road so as to further obstruct attempts at passage.

In light of these threats, plaintiff commenced this action against the Windeyers in New York State Supreme Court, seeking injunctive and declaratory relief from the Windeyers' continued obstruction of passage along the former Rhinehart Road and $7,000.00 in damages resulting from the their alleged interference with the sale of his property. The legal basis for plaintiff's suit is that he, by virtue of his continued open and notorious use of the roadway, acquired a prescriptive easement over the strip of land at issue. Plaintiff also asserts an interest in an easement by necessity over the abandoned roadway due to the fact that his parcel is otherwise without an avenue of ingress and egress.

The Windeyers subsequently removed the case to this court pursuant to 28 U.S.C. § 1441, alleging subject matter jurisdiction based upon diversity of citizenship, 28 U.S.C. § 1332(a)(2). The parties are diverse because, contrary to the assertions in the complaint, the Windeyers are Canadian citizens and plaintiff is an New York citizen.[3] As required by the diversity statute,

---

1. Plaintiff also moved for sanctions pursuant to Fed.R.Civ.P. 11. At oral argument, however, plaintiff voluntarily withdrew his motion for sanctions.

2. As a factual note, plaintiff originally purchased the property with his father, Alfred Cowan. Plaintiff purchased his father's interest in

the property in 1973, however, thus leaving plaintiff as the sole owner of the parcel in question. *See* Complaint ¶¶ 3–4.

3. In his complaint, plaintiff alleges that the Windeyers are New York residents. In removing this action, the Windeyers assert that they are Canadian residents and provide documentation

the Windeyers assert that the amount in controversy in this case exceeds $50,000.00. *See* 28 U.S.C. § 1332(a)(2).

Plaintiff moves to remand this case to the supreme court on grounds that this court lacks subject matter jurisdiction. He argues that the court lacks subject matter jurisdiction because the amount in controversy does not exceed $50,000.00, thus precluding reliance upon the diversity statute.

## II. DISCUSSION

"If at any time before final judgment it appears that the district court lacks subject matter jurisdiction [over a removed case], the case shall be remanded." 28 U.S.C. § 1447(c); *see, e.g., McRae v. Sweet,* No. 91–CV–1403, 1991 WL 274261, 1991 U.S.Dist. LEXIS 18260 (N.D.N.Y. Dec. 13, 1991). Plaintiff argues that the court lacks subject matter jurisdiction—and that the case must therefore be remanded—because the criteria for the Windeyers' purported basis for jurisdiction are not satisfied in this case.

The Windeyers argue that this court has jurisdiction under the "diversity" statute, 28 U.S.C. § 1332. Under that statute, they may invoke this court's jurisdiction by establishing that this suit is between citizens of a state and citizens of a foreign country *and* that "the matter in controversy exceeds the sum or value of $50,000." *Id.* While apparently conceding that the diverse citizenship requirement is satisfied, plaintiff contends that jurisdiction is nonetheless lacking because the amount in controversy does not exceed $50,000.00. The basis of plaintiff's argument is that the value of the *Windeyers'* property is only $42,918.45 and, according to plaintiff, "[i]t is impossible for an easement to damage property in excess of its total value." Pl. Mem. (2/27/92) at 1. Since the total value of the Windeyers' property is less than $50,000.00, argues plaintiff, *a fortiori* the damage caused by the easement cannot exceed that amount. The Windeyers, for their part, proffer extensive evidence show-

ing that their property value is far in excess of $50,000.00, and that imposition of the proposed easement would diminish their property value to a virtual nullity. Thus, argue the Windeyers, the amount in controversy far exceeds $50,000.00.

 In pursuing these arguments, the parties present the court with an issue which has created a sharp division among federal courts concerning the perspective from which the amount in controversy should be measured. *See, e.g., Ace Hardware Co., Inc. v. Ace Hardware Corp.,* No. 81–CV–798, 33 Fed.R.Serv.2d (Callaghan) 1374 (N.D.N.Y.1981) (Munson, C.J.) (discussing but not resolving the split among federal courts). Specifically, both parties presume that the amount in controversy should be measured according to the total damage done to the Windeyer—the defendant—property in this case. Their presumption is not without some precedent, *see, e.g., McCarty v. Amoco Pipeline Co.,* 595 F.2d 389, 395 (7th Cir.1979); *Donohue v. Board of Elections,* 435 F.Supp. 957, 964 n. 11 (E.D.N.Y.1976) (citations omitted), but nevertheless runs contrary to the ample case authority from this circuit holding that the amount in controversy for jurisdictional purposes should be measured strictly from the plaintiff's perspective, without regard to the damage caused to any other party. *See, e.g., Kheel v. Port of New York Auth.,* 457 F.2d 46, 48–49 (2d Cir.), *cert. denied,* 409 U.S. 983, 93 S.Ct. 324, 34 L.Ed.2d 248 (1972); *Myers v. Long Island Lighting Co.,* 623 F.Supp. 1076, 1078 (E.D.N.Y.1985) (citing *St. Paul Mercury Indemnity Co. v. Red Cab Co.,* 303 U.S. 283, 285, 58 S.Ct. 586, 588, 82 L.Ed. 845 (1938)); *Podrazik v. Blum,* 479 F.Supp. 182, 188 (N.D.N.Y.1979) (Foley, J.); *see also Ferris v. General Dynamics Corp.,* 645 F.Supp. 1354, 1361 & n. 7 (D.R.I.1986); 1 Moore's Federal Practice ¶ 0.91[1] (2d ed. 1985). Based upon this latter rule, the damage caused to the Windeyer property by imposition of an easement would be irrelevant; the court would measure the

to support their assertion. Plaintiff does not now dispute their Canadian residency or citizen-

ship.

amount in controversy from the plaintiff's perspective only. *See generally, e.g., Coleman v. Southern Norfolk*, 734 F.Supp. 719 (E.D.La.1990); *Kennard v. Harris Corp.*, 728 F.Supp. 453 (E.D.Mich.1989).

Although both parties presume that the amount in controversy should be measured from the Windeyer's perspective, only the Windeyers offer some justification for this approach. They argue that measurement from their perspective is appropriate because, by removing the case to this court, they are the party that invoked federal jurisdiction. Indeed, some courts hold that the amount in controversy for diversity purposes should be measured from the perspective of the party that invokes federal jurisdiction, whether that be the plaintiff (as is ordinarily the case) or the defendant who removes the case to federal court. *See, e.g., McLaughlin, Piven, Vogel, Inc. v. National Ass'n of Sec. Dealers, Inc.*, 733 F.Supp. 694, 697 (S.D.N.Y.1990) (citing *McNutt v. General Motors Acceptance Corp.*, 298 U.S. 178, 189, 56 S.Ct. 780, 80 L.Ed. 1135 (1936); *Kheel*, 457 F.2d at 49). This theory would allow defendants (such as the Windeyers) who remove cases to federal court to invoke federal jurisdiction based upon their own stake in the litigation, without regard to the amount in controversy with respect to the plaintiff. *See Solna, Inc. v. American Printing Equip., Inc.*, No. 89–715–CV–W–5, 1989 WL 325976 1989 U.S. Dist. LEXIS 11173 (W.D.Mo. Sept. 20, 1989) (applying perspective of defendant invoking federal jurisdiction); *Bedell v. H.R.C. Ltd.*, 522 F.Supp. 732, 735–36 (E.D.Ky.1981) (same).

The Second Circuit has not yet had an opportunity to instruct district courts on whether the jurisdictional amount should be measured from the perspective of the party removing the case to federal court. In the absence of binding authority providing some guidance to the contrary, this court is persuaded by well-settled axioms of jurisdictional analysis to reject that approach. This court abides by the rule that damages are measured strictly from the plaintiff's perspective, even in cases which have been removed by the defendant to federal court.

Two premises compel this conclusion. First, contrary to defense counsel's assertion at oral argument, "it is generally well recognized that a plaintiff may avoid diversity jurisdiction by pleading below the jurisdictional amount." *Kliebert v. Upjohn Co.*, 915 F.2d 142, 146 (5th Cir.1990), *reh'g granted en banc*, 923 F.2d 47 (5th Cir.), *appeal dismissed*, 947 F.2d 736 (5th Cir.1991) (catatonias omitted). By allowing a defendant to remove a case to federal court based upon the amount in controversy from its own perspective, the rule allowing a plaintiff to avoid federal jurisdiction by pleading damages below the jurisdictional threshold would be defeated. *See Kliebert*, 915 F.2d at 146–47. In the interest of preserving the settled rule that a plaintiff may chose to avoid diversity jurisdiction, the court should limit its inquiry to the pleadings set forth in plaintiff's complaint.

Second, determination of jurisdiction is generally based upon the rights asserted by the plaintiff, without regard to the defendant's pleading. *E.g. Louisville & Nashville R.R. v. Mottley*, 211 U.S. 149, 153, 29 S.Ct. 42, 43, 53 L.Ed. 126 (1908) (federal question jurisdiction); *Stone & Webster Engineering Corp. v. Ilsley*, 690 F.2d 323, 327 (2d Cir.1982), *aff'd sub nom, Arcudi v. Stone & Webster Engineering Corp.*, 463 U.S. 1220, 103 S.Ct. 3564, 77 L.Ed.2d 1405 (1983) (same). "Whether [a suit] could have been brought in federal court depends 'on the (truthful) allegations of the complaint rather than on an issue that might be—even one that certainly would be—injected later by the answer or some other subsequent pleading.'" *Lang v. American Electr. Power Co., Inc.*, 785 F.Supp. 1331 (N.D.Ind.1992) (citation omitted); *accord Leher v. Consolidated Papers, Inc.*, 786 F.Supp. 1480 (W.D.Wis. 1992). Because the amount in controversy is a jurisdictional prerequisite to diversity cases, this too should be measured based upon rights asserted by the plaintiff. If a plaintiff asserts rights that place into controversy an amount less than $50,000, then the court does not have jurisdiction, notwithstanding what defenses the defendant

might raise. As a corollary, since a case may be removed only if the court would have had original jurisdiction over the claim in the first place, *see* 28 U.S.C. § 1441, a defendant cannot rely upon the removal statute to "bootstrap" a federal claim based upon the damages that it may suffer as a result of plaintiff's claim. *See Rollwitz v. Burlington Northern R.R.*, 507 F.Supp. 582, 585–87 (D.Mont.1981) (general discussion as to why amount should be measured from plaintiff's perspective, even in removal cases); *Bull v. Big Three, Inc.*, 379 F.Supp. 41, 43 (E.D.Okla.1974).

This conclusion follows the rationale articulated by the Ninth Circuit in *Snow v. Ford Motor Co.*, 561 F.2d 787 (9th Cir. 1977). In *Snow*, the plaintiff brought a class action suit alleging deceptive advertising and sought, *inter alia*, an injunction against the defendant's future sale of a given product and approximately $5,011.00 in compensatory and punitive damages. The defendant removed the case to federal court on the basis of diversity of citizenship, asserting that the requisite jurisdictional amount (then $10,000) was met by the value to defendant of the business right which the plaintiff sought to enjoin. *See Snow*, 561 F.2d at 788. The Ninth Circuit rejected the defendant's argument for federal jurisdiction and ordered that the case be remanded to state court. The court based its holding in part on its view that "the proper focus [in measuring the amount in controversy] ... depends upon the nature and value of the right asserted" in the case. *Id.* at 790 (citations omitted). The right asserted in *Snow* was the plaintiff's right to be protected from deceptive advertising, which did not place into controversy the jurisdictional minimum. *Id.* at 790–91. Plaintiff's failure to allege the jurisdictional minimum was fatal to defendant's removal because "in the absence of a specific statutory exception, a federal court can exercise removal jurisdiction over a case only it would have had jurisdiction over it as originally brought by the plaintiff." *Id.* at 789; *see, e.g., Kheel*, 457 F.2d at 48–49 (damages are regularly viewed from the plaintiff's perspective; defendants damages are irrelevant); *Myers*, 623 F.Supp. at 1078 (same). The fact that *Snow* was brought as a class action does not affect its applicability to the present case: the court still refused to consider the amount in controversy *vis-a-vis* the removing party, instead deciding to limit its inquiry to the amount at stake for the plaintiff. *Accord Coleman*, 734 F.Supp. at 720–21; *Kennard*, 728 F.Supp. at 454; *Ferris*, 645 F.Supp. at 1361 & n. 7.[4]

■ Measuring the amount from the plaintiff's perspective presents a problem in this case, however, because neither party has set forth any allegations of the amount in controversy with respect to the plaintiff. Rather, they concentrate their efforts on arguing whether the amount in controversy from the Windeyers's perspective exceeds $50,000.00. The effect of this shortcoming is that neither party has alleged facts sufficient to invoke this court's jurisdiction under the diversity statute.[5] Since the Windeyers have not plead sufficient facts to invoke this court's jurisdiction under the diversity statute, the case must be remanded to state supreme court for want of subject matter jurisdiction. 28 U.S.C. § 1447(c); *see R.G. Barry Corp. v. Mushroom Makers, Inc.*, 612 F.2d 651, 655 (2d Cir.1979) ("burden falls squarely upon the

---

4. *See also* 14A Charles A. Wright, at al., Federal Practice and Procedure § 3703 (1985), wherein the authors noted the paradox that would be created by application of a rule allowing the jurisdictional amount to be measured from the defendant's perspective:

> If the jurisdictional amount must be tested from the plaintiff's viewpoint in an action instituted in federal court and from the defendant's viewpoint in a removed action, then a case dismissed from federal court for lack of the jurisdictional amount and recommenced in a state court theoretically could be re-

moved if the amount in controversy exceeded [$50,000] from the defendant's point of view. If this were true, then an action could be removed in a situation in which original jurisdiction would not exist; this would represent a violation of a well-established rule of federal subject matter jurisdiction.

(footnote omitted).

5. At any rate, based upon plaintiff's averments, it seems unlikely that either party would be able to show that the amount in controversy from the plaintiff's perspective exceeds $50,000.00.

removing party to establish its right to a federal forum"); *Sfirakis v. Allstate Ins. Co.*, No. 91–3092, 1991 WL 147482, 1991 U.S. Dist. LEXIS 10374 *4 (E.D.Pa. July 23, 1991) ("Because federal jurisdictional statutes are to be strictly construed, in cases where jurisdiction is questionable, doubts are. to be resolved against federal jurisdiction").

### III. CONCLUSION

The court lacks subject matter jurisdiction over this case. Therefore, the case is remanded to the New York State Supreme Court, Franklin County, pursuant to 28 U.S.C. § 1447(c).

IT IS SO ORDERED.