Madeline **BERNARD**, Plaintiff,

v.

**GERBER FOOD PRODUCTS CO.,** Defendant.

No. 95 Civ. 1903(HB).

United States District Court, S.D. New York.

Sept. 9, 1996.

Joshua M. Lifshitz, Mark C. Gardy, Abbey & Ellis, New York City, for plaintiff.

Thomas F. Munno, Judy L. Leone, Dechert Price & Rhodes, New York City, for defendant.

*Opinion and Order*

BAER, District Judge.[1]

Plaintiff brought this class action against defendant in state court seeking damages and injunctive relief for defendant's alleged false advertising of the ingredients in its baby food. Defendant removed the action to federal court asserting diversity jurisdiction over plaintiff's claims pursuant to 28 U.S.C. § 1332. Plaintiff now moves to remand. For the reasons set forth below, plaintiff's motion is granted.

## I. *Background*

Plaintiff Madeline Bernard initiated this class action in the Supreme Court of the State of New York on behalf of all persons in the United States who purchased Gerber baby food products manufactured or distributed by defendant beginning February 15, 1990 (the "class period"). Plaintiff purchased Gerber baby food products throughout the class period. Plaintiff claims that she relied on defendant's false advertising claims that its baby food contained an equal and even superior nutritional value than other baby foods on the market at that time.

Plaintiff's claims are all made under New York law. Plaintiff alleges that defendant engaged in: false and misleading advertising in violation of N.Y.Gen.Bus.L. § 350 (McKinney 1988); unlawful trade practices and false advertising in violation of N.Y.Gen.Bus.L. § 349 (McKinney 1988); negligent misrepresentation; breach of an express warranty; and common law fraud. Plaintiff seeks an order certifying the plaintiff class and appointing plaintiff as representative of that class [2]; restitution of all amounts paid by plaintiff and class members for the purchase of baby food products, together with interest; statutory pre-judgment interest; reasonable attorney's fees and the costs of this action; any additional and consequential damages for injuries suffered by plaintiff and other class members; equitable relief enjoining defendant from disseminating the advertising complained of herein; an order compelling corrective advertising; and such other relief that the Court deems just and proper.

Defendant Gerber removed this action to federal court on the basis of diversity juris-

---

1. Caroline Pillsbury, a second-year law student at Columbia University School of Law, and Narcisa I. Cabanilla, a third-year student at Benjamin N. Cardozo School of Law, aided in the research and preparation of this decision.

2. In her complaint plaintiff claims that this action should be deemed a class action because the plaintiff class satisfies the numerosity, commonality, typicality, adequacy and superiority requirements of a class action pursuant to N.Y.Civ. Prac.L. & R. § 901 (McKinney 1988).

diction, 28 U.S.C. § 1332, and filed an answer. Gerber has also removed similar actions pending in other jurisdictions to the appropriate federal court. Ideally, Gerber intends to transfer all federal actions to the Western District of Michigan where Gerber argues that most of the relevant witnesses and documents are located and where it is headquartered.

## II. *Discussion*

Pursuant to 28 U.S.C. § 1332, this Court may exercise diversity jurisdiction only where the parties are of diverse citizenship and the amount in controversy exceeds $50,-000, exclusive of interests and costs. 28 U.S.C. § 1332(a). There is no dispute that the parties are diverse here.[3] Thus, the only question for the Court to resolve is whether the amount in controversy requirement is satisfied.

The party seeking federal court jurisdiction bears the burden of establishing that the requirements of 28 U.S.C. § 1332 are satisfied. *See McNutt v. General Motors Acceptance Corp.,* 298 U.S. 178, 189, 56 S.Ct. 780, 785, 80 L.Ed. 1135 (1936). Here, the defendant seeks the Court's jurisdiction and, accordingly, bears the burden of proving that the statutory requirements are satisfied. *Law Audit Services, Inc. v. Studebaker Technology, Inc.,* 96 Civ. 0926, 1996 WL 137492, at *2 (S.D.N.Y. Mar. 27, 1996). The amount in controversy is determined at the time the complaint is filed. *Chase Manhattan Bank v. American National Bank,* 93 F.3d 1064, 1069 (2d Cir.1996).

In that regard, Gerber proposes three independent theories on which I might posit jurisdiction; (1) the "either viewpoint rule," pursuant to which this Court should in Gerber's view look to the cost of injunctive relief to defendant to satisfy the amount in controversy requirement; (2) plaintiff's request for punitive damages constitutes a "common and undivided interest"; and (3) if successful, all attorney's fees will be awarded to the class representative, thus this Court should exercise supplemental jurisdiction over the unnamed plaintiffs under 28 U.S.C. § 1367. Each of defendant's arguments is addressed, and rejected, below.

### a. The "either viewpoint" rule is not applicable.

Defendant argues that for purposes of determining the amount in controversy, the Court can look to the value of relief requested to either party. Defendant argues the jurisdictional amount is satisfied here and that this Court can exercise jurisdiction when the cost of relief is measured from the defendant's perspective. Specifically, plaintiff herein seeks injunctive relief, she requests that defendant be enjoined from disseminating its allegedly false advertising and that the Court order defendant to issue corrective advertising. Defendant contends that such relief would require the company to halt existing advertising campaigns and reissue new advertising, all at a cost in excess of $50,000, thereby satisfying the amount in controversy requirement. *See generally* Aff. of J. Patrick Doyle.

In litigations where injunctive or declaratory relief is sought, the general rule is that the amount of that relief is measured by the value of the object of the litigation. *Hunt v. Washington State Apple Advertising Comm'n,* 432 U.S. 333, 347, 97 S.Ct. 2434, 2443, 53 L.Ed.2d 383 (1977); *Beacon Constr. Co. v. Matco Elec. Co.,* 521 F.2d 392, 399 (2d Cir.1975) (amount in controversy is measured by "the value of the consequences which may result from the litigation.") Courts differ however, on the issue of from whose perspective the object of the litigation should be viewed. *See* 14 A Charles A. Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice and Procedure* § 3725 (2d ed. 1985) (noting that courts are split as to whether or not the plaintiff's viewpoint, the defendant's viewpoint or the viewpoint of the party invoking federal jurisdiction governs).

---

3. Plaintiff is a New York State resident. Defendant is a multinational company with its principal place of business in Michigan. Gerber manufactures baby foods, infant formulas, juvenile apparel, nursery products and infant care items which are distributed throughout the United States and internationally. The baby food at issue here is manufactured and distributed throughout the United States.

The Second Circuit generally follows the majority of courts and looks to the relief sought from the plaintiff's viewpoint. *Law Audit Services Inc. v. Studebaker Technology, Inc.*, 1996 WL 137492, at *4 (S.D.N.Y. Mar. 27, 1996) (*citing Kheel v. Port of New York Authority*, 457 F.2d 46 (2d Cir.), *cert. denied*, 409 U.S. 983, 93 S.Ct. 324, 34 L.Ed.2d 248 (1972)). At least one case, *Cowan v. Windeyer*, 795 F.Supp. 535, 537 (N.D.N.Y.1992), suggests that this is clearly the law; there Judge McCurn writes that there is "ample case authority from this circuit holding that the amount in controversy for jurisdictional purposes should be measured strictly from the plaintiff's perspective, without regard to the damage caused to any other party." *Id.* (citations omitted).

The defendant relies on, *inter alia*, *McCarty v. Amoco Pipeline Co.*, 595 F.2d 389 (7th Cir.1979), where the court held defendant's viewpoint to be controlling. However, as plaintiff points out, *McCarty* was not a class action lawsuit, thus the Court did not have to rely on aggregating damages to meet the jurisdictional minimum. *McCarty*, 595 F.2d at 391. Further, the *McCarty* plaintiffs sought *only* injunctive relief, the removal of the pipeline. *Id.* Accordingly, the Seventh Circuit could look only to the defendant's costs in removing the pipeline when assessing whether or not the jurisdictional minimum was satisfied. *Id.* at 392.

■ While two recent decisions one from Louisiana and another from Illinois, have applied the defendant's viewpoint rule where a plaintiff seeks both damages and injunctive relief, *see In re Ford Motor Co. Bronco II Products Liability Litigation*, 1996 WL 257570 (E.D.La. May 16, 1996); *Tykla v. Gerber Products Co.*, 1996 WL 341441 (N.D.Ill. June 14, 1996), this Circuit has to date applied the plaintiff's viewpoint rule and has refused to measure the costs of relief from the defendant's viewpoint. *See generally Kheel v. Port of New York Authority*, 457 F.2d 46 (2d Cir.), *cert. denied*, 409 U.S. 983, 93 S.Ct. 324, 34 L.Ed.2d 248 (1972); *Cowan v. Windeyer*, 795 F.Supp. 535, 537 (N.D.N.Y. 1992); *Leslie v. BancTec Service Corp.*, 928 F.Supp. 341, 348 n. 11 (S.D.N.Y.1996) ("When necessary, the Court will use the 'plaintiff's viewpoint' test.") (citing *Law Audit Servs., Inc. v. Studebaker Tech., Inc.*, 96 Civ. 0926, 1996 WL 137492, *3 (S.D.N.Y. Mar. 27, 1996)). Additionally, jurisdictional requirements are based generally upon the rights asserted by the plaintiff without regard to the defendant's pleading. *Cowan*, 795 F.Supp. at 538. In *Snow v. Ford Motor Co.*, 561 F.2d 787 (9th Cir.1977), a class action involving allegations of deceptive advertising, the plaintiffs sought to enjoin defendant's future sales of a given product as well as $5,011 in compensatory and punitive damages. The defendant removed the case to federal court on the basis of diversity jurisdiction and asserted that the jurisdictional requirement, then $10,000 was satisfied by the value to the defendant of the business right which plaintiffs sought to enjoin. *Snow*, 561 F.2d at 788. The Ninth Circuit rejected the defendant's argument and ordered that the case be remanded to state court; stating that when measuring the amount in controversy, the "proper focus ... is upon the nature and value of the right" asserted by the plaintiff in the case. *Id.* at 790 (citations omitted).

Finally, strong policy considerations favor the plaintiff's viewpoint rule; federal courts are courts of limited jurisdiction. To extend jurisdiction beyond the limits firmly established without Congressional approval is beyond this Court's province. As the Second Circuit has noted:

> [i]n light of the congressional intent to restrict federal court jurisdiction, as well as the importance of preserving the independence of state governments, federal courts construe the removal statute narrowly, resolving any doubts against removability.

*Somlyo v. J. Lu–Rob Enterprises, Inc.*, 932 F.2d 1043, 1045–46 (2d Cir.1991) (citing *Shamrock Oil & Gas Corp. v. Sheets*, 313 U.S. 100, 108, 61 S.Ct. 868, 872, 85 L.Ed. 1214 (1941); 1A J. Moore & B. Ringle, Moore's Federal Practice ¶ 0.157 at 38 (2d ed. 1989)). Congress' intent to restrict federal court jurisdiction would be diluted if courts measured the costs of relief from the defendant's viewpoint in a removal action and

such a rule would broaden, rather than restrict, federal court jurisdiction.[4]

■ Courts have typically focused on the interests or type of relief a plaintiff seeks to protect and not the cost of injunctive relief to the defendant when evaluating the amount in controversy requirement. To evaluate the jurisdictional amount from the defendant's viewpoint "would eviscerate ... [the idea that] claims of class members may not be aggregated in order to meet the jurisdictional threshold." *Packard v. Provident Nat'l Bank,* 994 F.2d 1039, 1050 (3d Cir.1993). Consequently, defendant's "either viewpoint" argument must be rejected.

### b. Punitive damages do not constitute a "common and undivided interest."

The Supreme Court has held that:

separate and distinct claims of two or more plaintiffs cannot be aggregated in order to satisfy the jurisdictional amount requirement [and that] aggregation has been permitted only ... in cases where two or more plaintiffs united to enforce a single title or right in which they have a common and undivided interest.

*Snyder v. Harris,* 394 U.S. 332, 335, 89 S.Ct. 1053, 1056, 22 L.Ed.2d 319 (1969); *see also Zahn v. International Paper Co.,* 414 U.S. 291, 294–95, 94 S.Ct. 505, 508–09, 38 L.Ed.2d 511 (1973) (the "distinction and rule that multiple plaintiffs with separate and distinct claims must each satisfy the jurisdictional amount requirement for suit in the federal courts were firmly rooted in prior cases.... The rule has been applied to forbid aggregation of claims where none of the claimants satisfies the jurisdictional amount...."). Plaintiff seeks to recover punitive damages from defendant for engaging in false advertising in violation of New York's General Business Law. Defendant argues that since the purpose of punitive damages is to deter

wrongful conduct, and punitive damages do not emphasize an individual plaintiff's harm, the Court may view plaintiff's punitive damage claim here as a "common and undivided interest" of the class, the entire value of which is attributable to plaintiff herein and would exceed $50,000.

Defendant relies principally on *Allen v. R & H Oil & Gas Co.,* 63 F.3d 1326 (5th Cir.), *reh'g, en banc, denied,* 70 F.3d 26 (1995), to support its argument. In *Allen,* the court stated that:

while punitive damages do not fall neatly into either the 'non-aggregation' case law or the 'common and undivided interest' exception, the unique nature of these awards requires, ... that the full amount of alleged punitive damages is counted against each plaintiff's required jurisdictional amount.

*Id.,* at 1333. *Allen,* however, is not controlling.

The *Allen* court did not base its holding on the ground that punitive damages constitute a "common and undivided interest," in short it created its own unique exception to *Zahn.* More recently, the court in *Bishop v. General Motors,* 925 F.Supp. 294 (D.N.J.1996), firmly rejected the notion that punitive damages in a case like the one before me can constitute a "common and undivided interest" finding:

[t]he paradigm cases of "common and undivided interest" ... are those which involve a single indivisible *res,* such as an estate, a piece of property (the classic example), or an insurance policy. These are matters which cannot be adjudicated without implicating the rights of everyone involved. This is not true of punitive damages. Individual plaintiffs can sue separately for punitive damages, and whether they prevail on the merits or not, ... the rights of subsequent plaintiffs remain unaffected.... The potential plaintiffs' claims for punitive damages in this case are thus not

---

4. For example, as pointed out in Wright's *Federal Practice and Procedure* § 3073, if courts tested the jurisdictional amount from the plaintiff's viewpoint when an action is instituted in federal court but yet from the defendant's viewpoint when an action is removed to federal court, then it is possible that a case which is dismissed for lack of subject matter jurisdiction because the jurisdictional requirement is not satisfied, and

which is recommenced in state court, could theoretically be removed if the amount in controversy from the defendant's point of view exceeded $50,000. Thus, if the Court were to adopt Gerber's argument, every defendant might remove its class action to the federal courts and the jurisdictional boundaries which now exist would at best be blurred.

a "single" right; rather, they are separate and distinct to be brought together in a class action only for the convenience of the plaintiffs.

*Bishop,* 925 F.Supp. at 298; *but see Jones v. Dow Chem. Co.,* 885 F.Supp. 905, 910 (M.D.La.1994); *Lailhengue v. Mobil Oil Corp.,* 775 F.Supp. 908, 912 (E.D.La.1991).

█ The claims of the class in this case derive from the individual injury each plaintiff suffered as the alleged victim of consumer fraud. Plaintiffs' injuries do not constitute a "common and undivided interest." [5] As this court has noted the exception to the holding in *Zahn* "only applies where 'several plaintiffs unite to enforce a single title or right, in which they have a common and undivided interest.' " *Benfield v. Mocatta Metals Corp., et al.,* 91 Civ. 8255, 1993 WL 148978, *3 (S.D.N.Y. May 5, 1993). Thus, where the plaintiff class does not share a common and undivided interest, as here, their injuries must be determined individually and cannot be aggregated. *Id.* Consequently, punitive damages may not be aggregated to meet the $50,000 jurisdictional requirement and defendant's second argument is rejected.

### c. The Court declines to exercise supplemental jurisdiction over the unnamed class members and aggregate attorney's fees.

█ Defendant's third argument in support of federal jurisdiction really has two prongs; first, defendant contends that under N.Y.Civ.Prac.L. & R. § 909 [6] the Court awards the class representative all the attorney's fees which defendant predicts will exceed $50,000, and second, the Court can exercise supplemental jurisdiction pursuant to 28 U.S.C. § 1367 [7] over the remaining class members' claims. In support of this argument, Gerber relies primarily on *Free v. Abbott Lab. (In re Abbott Lab.),* 51 F.3d 524 (5th Cir.), *reh'g en banc, denied,* 65 F.3d 33 (1995). There the Fifth Circuit concluded that it could exercise diversity jurisdiction over the named plaintiff due to a specific provision of the Louisiana law which awards attorney fees to representative parties. *In re Abbott Lab.,* 51 F.3d at 526–27 (citations omitted). The court went on to hold that the 1990 legislative enactment of 28 U.S.C. § 1367 effectively overruled *Zahn* allowing the court to exercise supplemental jurisdiction over the unnamed class members whose claims did not reach the jurisdictional minimum. *Id.; see also Tykla,* 1996 WL 341441, at *4.

This is the minority view and has not been followed in this Circuit. *See Benfield,* 1993 WL 148978, at *4; *Trapanotto v. Aetna Life Insurance Co.–Aetna Health Plans,* 95 Civ. 10704, 1996 WL 417519, at *8 (S.D.N.Y. July 25, 1996). In *Trapanotto,* a class action like the case at bar, the defendant advanced a similar argument i.e., that the Court can

---

**5.** The plaintiff class as a whole has an interest in not being exposed to false and misleading information. However, that interest is addressed in the issue of injunctive relief. Here, the focus of the inquiry is on the monetary damages they seek from the defendants. These damages are "separate and distinct," *Snyder,* 394 U.S. at 335, 89 S.Ct. at 1056, because plaintiffs' injuries are "separate and distinct," each plaintiff purchased a different quantity of defendant's baby food. Furthermore, any damage award here could be paid out without effecting the rights of other plaintiffs, unlike a situation where the court is awarding damages by dividing a trust, piece of property or an insurance policy.

**6.** N.Y.Civ.Prac.L. & R. § 909 provides that:

The court may allow the representative parties their reasonable expenses of litigation, including attorney's fees, when as a result of the class action a fund is made available, or a recovery

or compromise is had which is beneficial, to the class.

**7.** 28 U.S.C. § 1367 states in relevant part that:

(a) ... in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution. Such supplemental jurisdiction shall include claims that involve the joinder or intervention of additional parties. (b) In any civil action of which the district courts have original jurisdiction founded solely on section 1332 of this title, the district courts shall not have supplemental jurisdiction under subsection (a) ... over such claims would be inconsistent with the jurisdictional requirements of section 1332.

award attorney's fees based on the defendant's representation that they will exceed $50,000. Judge Preska rejected this argument concluding that to calculate attorney's fees prior to certification of the class would be impossible and speculative, and went on to write:

> [w]ithout certification, of course, it is impossible to award fees under § 909. (citations omitted). Even if a class was certified, there is no factual predicate to estimate reasonably the representative plaintiff's own damages, other than to assume, given the nature of the case, that they are small. Nor is there any basis to estimate reasonably the amount of work required for the case, the value of that work to the class, or the likely amount of attorneys' fees, much less what fees would be "reasonable."

*Trapanotto*, 1996 WL 417519, at *9.

Unlike the Fifth Circuit, the Second Circuit has not embraced the idea that 28 U.S.C. § 1367 overrules *Zahn.* *See Benfield*, 1993 WL 148978, at *4 (without a Congressional showing that 28 U.S.C. § 1367 overrules *Zahn* "this Court declines to exercise supplemental jurisdiction over class members' claims for less than $50,000 in damages."); *Trapanotto*, 1996 WL 417519, at *11. Accordingly, even if successful on the first prong of this argument and the Court decided to award all attorneys' fees to plaintiff herein, defendant's argument would fail on the second prong as the Court would not be able to exercise supplemental jurisdiction over the remaining plaintiffs' claims. Thus, this argument too must be rejected.

### III. *Conclusion*

Plaintiff's claim for relief falls far short of this Court's jurisdictional requirement under 28 U.S.C. § 1332. While the Court realizes the values of consolidation, perhaps even in conserving the time of one or more courts around the country, I am constrained to conclude that under the facts here, this Court is without jurisdiction and the motion to remand must be granted. Plaintiff's motion is GRANTED and this action is remanded to

New York State Supreme Court, County of New York.

SO ORDERED.