### Tabitha COLON, on Behalf of Herself and All Others Similarly Situated, Plaintiff,

### v.

### RENT–A–CENTER, INC. and Thorn Americas, Inc., Defendants.

#### No. 97 Civ. 9569(LBS).

United States District Court, S.D. New York.

Aug. 3, 1998.

---

Bernstein Litowitz Berger & Grossmann L.L.P., New York City, Seth R. Lesser, Andrew Levitt, Hoffman & Edelson, Doylestown, PA, Marc H. Edelson, of counsel, for Plaintiff.

Paul, Weiss, Rifkind, Wharton & Garrison, New York City, Jay Cohen, Donald W. Hawthorne, Hallie B. Levin, for Defendants.

## OPINION

SAND, District Judge.

The Plaintiff, Tabitha Colon, brought this proposed class action in New York State Supreme Court, Bronx County, against the Defendants, Rent–A–Center, Inc. and Thorn Americas, Inc. (collectively "Rent–A–Center"), seeking damages and injunctive relief for alleged violations of state statutes governing rent-to-own transactions and deceptive trade practices. The Defendants removed the action to federal court asserting diversity jurisdiction under 28 U.S.C. § 1332. The Plaintiff now moves for remand pursuant to 28 U.S.C. § 1447(c). For the reasons set forth below, the Plaintiff's Motion is granted.

## I. BACKGROUND

### 1. *History*

The Plaintiff filed suit in Supreme Court, Bronx County, on November 26, 1997. Her Complaint asserts both individual claims and claims on behalf of a putative statewide class, which would consist of all persons in the State of New York who rented merchandise from Rent–A–Center stores during the period from November 26, 1991 through November 26, 1997. (Compl. ¶ 12.) These claims are brought under N.Y. Gen. Bus. Law §§ 349–50 and N.Y. Pers. Prop. Law §§ 500 *et seq.* (Compl. ¶ 1.)

Rent–A–Center, which has over seventy stores in New York, engages in the rent-to-own business. (Defs.' Mem. at 2.) It offers consumers the opportunity to acquire merchandise through a series of renewable weekly or monthly leases. As the Defendants explain: "At the end of each rental period, the consumer can terminate the lease without further obligation (thus distinguishing a rent-to-own transaction from an installment date). Alternatively, if the consumer renews the lease each week or month for the entire contractually stated term, he or she will acquire ownership of the goods." (*Id.*)

The thrust of the Complaint is that Rent–A–Center engages in fraudulent business practices that coerce consumers to enter into contracts of adhesion that do not disclose the real economic costs of the rent-to-own transactions. (Compl. ¶¶ 2–6.) Among other allegations, the Plaintiff claims that: (1) Rent–A–Center misrepresents or conceals material information concerning the true cost of renting its merchandise; (2) consumers lack sufficient information to compare Rent–A–Center to other credit options and have therefore unknowingly found themselves paying inflated amounts for the goods they rent or rent-to-own; (3) customers who exercise an early purchase option for the goods they rent may pay more than the "total cost" of the merchandise; (4) Rent–A–Center offers goods for purchase at a "cash price" higher than the price charged by other retailers for comparable goods; (5) Rent–A–Center fails to disclose the "effective interest rate" applicable to rent-to-own transactions, which rates may be as high as 200% annually, or more;

and (6) Rent–A–Center engages in a high-pressure sales scheme to coerce consumers–particularly low-income consumers–to enter into adhesion contracts. (*Id.*) Rent–A–Center denies any wrongdoing.

As relief, the Plaintiff requests, among other things, the following items: (1) compensatory and punitive damages; (2) treble damages, reasonable attorneys' fees, filing fees and costs pursuant to Gen. Bus. Law §§ 349(h) and 350–d(3) and/or Pers. Prop. Law § 507; (3) rescission of the contracts of the Plaintiff and other putative class members; and (4) injunctive relief. (Compl. at 18–20.) The request for injunctive relief has three components; specifically, the Plaintiff seeks relief requiring the Defendants: (1) to cease from marketing the services of Rent–A–Center by means of listing a cash price for merchandise that is significantly higher than the price charged for the merchandise in the retail marketplace; (2) to cease from setting a cash price for merchandise that could cause the total cost of a rent-to-own contract to be higher than the total cost stated in the contract if a customer exercises an early purchase option; and (3) to inform customers of the effective economic interest rate on their rent-to-own transactions. (*Id.* at 18.)

### 2. *Motion*

The Defendants filed a Notice of Removal on December 31, 1997, asserting diversity jurisdiction pursuant to 28 U.S.C. § 1332. On March 4, 1998, the Plaintiff filed her Motion to Remand ("Motion") pursuant to 28 U.S.C. § 1447(c). After granting several adjournments, the Court heard oral argument on May 21, 1998. (*See* Tr. of 5/21/98, at 1–21.) At the close of argument, the Court reserved decision and the Motion became fully submitted. (*Id.* at 21.)

## II. DISCUSSION

### A. *Legal Standard*

The district court may exercise diversity jurisdiction only where: (1) the parties are completely diverse; and (2) the amount in controversy exceeds $75,000, exclusive of interests and costs. 28 U.S.C. § 1332(a). The party seeking federal jurisdiction bears the burden of establishing these statutory requirements. *McNutt v. General Motors Acceptance Corp.*, 298 U.S. 178, 189, 56 S.Ct. 780, 80 L.Ed. 1135 (1936).

In the Second Circuit, courts must "construe the removal statute narrowly, resolving any doubts against removability." *Somlyo v. J. Lu–Rob Enters., Inc.*, 932 F.2d 1043, 1045–46 (2d Cir.1991). This policy recognizes: (1) the well-documented intent of Congress to limit the jurisdiction of federal courts; and (2) the significance of "preserving the independence of state governments." *Id.*

### B. *Complete Diversity*

No one disputes that the requirement of complete diversity is met here. Rent–A–Center is a Delaware corporation with its principal place of business in Wichita, Kansas, (Notice of Removal ¶ 7), while the putative class is composed of New York citizens exclusively. (Compl.¶ 12.) Accordingly, the only question is whether the amount-in-controversy requirement is satisfied.

### C. *Amount in Controversy*

### 1. *General Rule*

In a diversity class action, the general rule is that members of the class are not permitted to aggregate their claims to reach the requisite amount in controversy. *Snyder v. Harris,* 394 U.S. 332, 338, 89 S.Ct. 1053, 22 L.Ed.2d 319 (1969). Instead, each member of the putative class must be able to establish the minimum jurisdictional amount. *Zahn v. International Paper Co.,* 414 U.S. 291, 294–95, 94 S.Ct. 505, 38 L.Ed.2d 511 (1973). Aggregation may be appropriate, however, under certain limited circumstances, such as where several plaintiffs unite to enforce a single title or right in which they have a "common and undivided interest." *Troy Bank v. G.A. Whitehead & Co.,* 222 U.S. 39, 40–41, 32 S.Ct. 9, 56 L.Ed. 81 (1911).

### 2. *Application of Law to Facts*

In this case, Rent–A–Center offers two principal theories upon which this Court might posit jurisdiction–one concerning injunctive relief, and the other concerning at-

torneys' fees.[1] Specifically, Rent–A–Center argues: (1) that the Plaintiff's claim for injunctive relief satisfies the amount in controversy requirement because the putative class has a "common and undivided interest" in such relief; and (2) that the Plaintiff's claim for attorneys' fees provides an independent basis for jurisdiction since, under New York law, such fees are awarded to the class representative, instead of being spread among the class members at large. (Defs.' Mem. at 1–3.) As discussed below, we reject both theories.

### a. *Injunctive Relief*

In a suit for damages, the question of whether the amount in controversy exceeds the jurisdictional minimum usually involves a straightforward analysis because the amount the plaintiff stands to gain is the same as the amount the defendant stands to lose. Where, as here, there is a request for injunctive relief, however, the question often becomes more complicated and the answer "may well turn on an initial decision concerning the viewpoint from which the matter in controversy is measured." 15 James Wm. Moore et al., *Moore's Federal Practice,* ¶ 102.109[1], at 102–196.1.

> For example, in an action seeking injunctive relief, a plaintiff may not stand to benefit by an amount in excess of the jurisdictional amount; however, the cost of compliance to the defendant might well be in excess of the jurisdictional amount. In such a case, if the plaintiff files a state-court action praying for damages far below the federal minimum, should the defendant be deprived of access to the federal courts if the defendant desires to remove the case? Similarly, if the plaintiff in the same case prefers to file originally in federal district court, should that plaintiff be precluded from doing so because the value of the object of the litigation is not worth the jurisdictional amount from its point of view, although an excess of the jurisdictional amount is at stake in the suit from the defendant's point of view?

*Id.* ¶ 102.109[1], at 102–196.1 to 197. As the parties recognize, these issues have spawned an extraordinary amount of judicial and academic commentary.[2]

In this case, no member of the class has stated a claim for over $75,000. Rent–A–Center nevertheless argues that the jurisdictional minimum is satisfied insofar as the Plaintiff seeks an injunction requiring Rent–A–Center to lower its cash price on merchandise to the prevailing prices charged by retailers for comparable goods. Specifically, Kipp Orme, Vice President of Thorn Americas, Inc., submits that "reducing cash prices to prevailing retail prices would result in a reduction of payments by Rent–A–Center's customers in New York by more than $5 million per year." (Orme Aff. ¶ 4.) This is because:

> We found that, on average, the MSRP [manufacturer's suggested retail price] is approximately 70 percent of Rent–A–Center's cash price for the same merchandise. Reducing the cash price to approximately 70 percent of its current level necessarily reduces the payments made by Rent–A–Center's New York customers because [under the pertinent New York statute] total rental payments may not exceed twice the cash price.

Customers who acquire Rent–A–Center merchandise do so after making, on average, 78 weeks of rental payments. Assum-

---

1. We note that the Defendants do not seek to satisfy the jurisdictional minimum by aggregating either the compensatory or punitive damages sought by the Plaintiff on behalf of herself and the putative class. These jurisdictional avenues have been foreclosed by the Second Circuit. *Gilman v. BHC Secs., Inc.,* 104 F.3d 1418, 1423–31 (2d Cir.1997).

2. *See, e.g.,* 2 Herbert B. Newberg & Alba Conte, *Newberg on Class Actions,* § 6.11 (3d ed. 1992 & Supp.1997) (discussing jurisdictional amount in controversy and aggregation of claims); 14A Charles A. Wright et al., *Federal Practice and Procedure,* § 3725 (2d ed. 1985 & Supp.1997) (analyzing amount in controversy in removed actions specifically); S.R. Shapiro, Annotation, *Right, in Suit Brought as Class Action, to Aggregate Claims or Interests of Members of Class in Order to Satisfy Minimum Jurisdictional Amount Requirement in Federal District Court,* 3 A.L.R. Fed. 372 (1970 & Supp.1997); Mark C. Cawley, Note, *The Right Result for the Wrong Reasons: Permitting Aggregation of Claims Under 28 U.S.C. § 1367 in Multi–Plaintiff Diversity Litigation,* 73 Notre Dame L.Rev. 1045 (1998).

ing that weekly rental payment amounts are held constant, that would mean that a consumer would acquire ownership, on average, 20 weeks earlier.

The average rental payment per week is approximately $15. As a result, the average savings by Rent–A–Center's customers if the cash prices were reduced to the MSRP would be about $300 ($15 per week times 20 weeks). Applying this $300 savings to the many thousands of transactions each year in which Rent–A–Center customers acquire ownership, the total savings to consumers in New York would be at least $5 million per year. Indeed, if only 250 Rent–A–Center customers benefitted from this reduction in cash price, the savings would equal the $75,000 I understand to be of significance for this motion.

(*Id.* ¶¶ 6–8.) Rent–A–Center argues, moreover, that this prospective injunctive relief must be valued as a whole–thereby satisfying the jurisdictional minimum–since, if such prospective relief is available to one member of the class, then it must be available to all. In this sense, the Defendants argue, the Plaintiff is actually seeking to enforce a single, "integrated" right on behalf of all of the members of the putative class. We analyze these contentions below.

### (i) *Viewpoint*

■ The examining court has three viewpoint options. First, the court can adopt the "plaintiff's viewpoint," according to which the amount in controversy is considered from the perspective of the plaintiff only, "on the theory that this approach is likely to produce greater certainty of result and promote simplicity." Moore et al., *supra*, ¶ 102.109[2], at 102–197. Second, the court can adopt the "either viewpoint rule," by which it considers the perspective of either the plaintiff or the defendant. Or third, the court can adopt the viewpoint of the party seeking to invoke federal jurisdiction. Under this latter approach, the court "looks to the plaintiff's viewpoint in a case filed originally in federal court, and to the defendant's viewpoint in a case brought to the federal courts by removal from a state court." *Id.*

■ In the Second Circuit, the amount in controversy is measured strictly from the plaintiff's viewpoint, without regard to the amount at stake for any other party. *See Kheel v. Port of N.Y. Auth.*, 457 F.2d 46, 48–49 (2d Cir.), *cert. denied*, 409 U.S. 983, 93 S.Ct. 324, 34 L.Ed.2d 248 (1972). This is the majority rule, and it applies to removal actions just as it does to actions filed originally in federal court. *Cowan v. Windeyer*, 795 F.Supp. 535, 537 (N.D.N.Y.1992). Moreover, "[w]hen this viewpoint is employed, it is used regardless of the nature of the action; it applies both to declaratory and equitable relief actions." Moore et al., *supra*, ¶ 102.109[1], at 102–198 Indeed, "the Second Circuit measures the value of the controversy in injunction actions by reference to the property right that plaintiff seeks to protect by invocation of an equitable remedy." *Id.* (citing *Rockwell v. SCM Corp.*, 496 F.Supp. 1123, 1125 (S.D.N.Y.1980)).

The fact that this suit is a class action does not alter the Court's analysis. As one commentator explained:

> As previously discussed, the claims of the members of a class in a diversity class action may not be aggregated to meet the minimum jurisdictional amount. However, if the defendant's viewpoint is to be considered, the rule of nonaggregation may be circumvented.... *For this reason, courts have been reluctant to adopt any approach other than the plaintiff's viewpoint in class actions.*

*Id.* ¶ 102.109[6], at 102–202 (emphasis added). Accordingly, we will view the present controversy from the perspective of the Plaintiff, and reject any argument that would, as a practical matter, undermine this rule of law.

### (ii) *"Common and Undivided Interest"*

Rent–A–Center argues that, even if the Court views the amount in controversy from the perspective of the Plaintiff, the jurisdictional minimum is still met because the injunction must be valued as a whole. That is, because the class members have a "common and undivided interest" in the prospective injunctive relief, aggregation of the entire $5 million purported value of injunctive would

be appropriate. This argument suffers from three principal flaws.

First, the case at bar is "a square peg which cannot easily be squeezed into the rolling contours of the *Zahn* exception." *Ferris v. General Dynamics Corp.*, 645 F.Supp. 1354, 1364 (D.R.I.1986). The difficulty "rests with the fact that the 'integrated right' exception permits aggregation only when (i) some discrete fund or kitty is involved, and (ii) as among the petitioning plaintiffs, the claim is both 'common' (all sue by virtue of a like right) and 'undivided' (the suitors make no specific claims for individual allocation of the fund)." *Id.* Indeed, the Second Circuit has referred to this as the "common fund" exception. *Gilman*, 104 F.3d at 1422. Thus, "the 'paradigm cases' allowing aggregation of claims 'are those which involve a single indivisible res, such as an estate, a piece of property (the classic example), or an insurance policy. These are matters that cannot be adjudicated without implicating the rights of everyone involved in the res.'" *Id.* (quoting *Bishop v. General Motors Corp.*, 925 F.Supp. 294, 298 (D.N.J. 1996)). Clearly, this is not such a "paradigm case."

Second, regardless of the merits of the foregoing general framework, we find that the particular facts present here counsel against treating the value of the injunctive relief as a single, integrated unit. That is, on these facts, aggregating the proposed injunctive relief is inappropriate, just as it would be inappropriate to aggregate the Plaintiff's claims for compensatory damages. As the Seventh Circuit stated in an analogous context involving the question of whether defendant drug companies could continue to charge what the plaintiffs alleged was an illegal price for certain prescription products:

> Whatever the form of relief sought, each plaintiff's claim must be held separate from each other plaintiff's claim from both the plaintiff's and the defendant's standpoint. The defendant in such a case is deemed to face multiple claims for injunctive relief, each of which must be separately evaluated. The question then becomes ... whether each plaintiff is asserting an individual right or, rather, a right to an undivided interest in something. In this case it is the former. Each plaintiff has a right to be free from the indirect effects of collusive pricing.

*In re Brand Name Prescription Drugs Antitrust Litig.*, 123 F.3d 599, 610 (7th Cir.1997) (citation omitted). In writing for the Seventh Circuit, Judge Posner emphasized that "[t]he test, we repeat, is the cost to each defendant of an injunction running in favor of one plaintiff; otherwise, the nonaggregation rule would be violated." *Id.*

This prohibition on aggregating claims for prospective injunctive relief in class actions has been followed by numerous other courts. *See, e.g., Crosby v. America Online, Inc.*, 967 F.Supp. 257, 265 (N.D.Ohio 1997) (finding that purported cost to defendant to change its Internet business practices did not satisfy jurisdictional minimum since appropriate methodology for court's calculation of amount in controversy was to prorate cost of injunction across the total numbers of plaintiffs). In the seminal case of *Snow v. Ford Motor Co.*, 561 F.2d 787 (9th Cir.1977), for instance, the Ninth Circuit rejected the defendant's argument that federal jurisdiction existed on the basis that the plaintiff's requested injunction—which would have barred the defendant automobile manufacturer from continuing to sell a kit to connect a trailer to a vehicle without including in that kit $11 worth of wiring to connect the trailer lights to the vehicle's electrical system—would have cost the defendant in excess of the minimum jurisdictional amount if the injunction were granted. In doing so, the Ninth Circuit used language that resonates today:

> "Total detriment" is basically the same as aggregation. The only reason the injunction is worth more than $10,000 to Ford is that it would affect all of Ford's future trailer package sales to thousands of other individual consumers. *In short, we hold that, where "the equitable relief sought is but a means through which the individual claims may be satisfied, the ban on aggregation (applies) with equal force to the equitable as well as the monetary relief."*

*Id.* at 790 (citation omitted) (emphasis added). Eleven dollars per plaintiff did not establish federal jurisdiction then, and, even

accepting the Defendants' representations at face value, three hundred dollars per plaintiff does not establish jurisdiction now. *See supra* Section II.C.2(a).

The third flaw is that, even if Rent–A–Center were correct that the prospective injunctive relief should be viewed as a whole, the substantial problem of valuation would still remain. As one court explained recently: .

> Merely because an injunction is valued as a "whole" does not mean that this case will necessarily remain in federal court, however. The value of the injunction must still meet the jurisdictional requirement of the court. The Eleventh Circuit recently explained how this injunction is to be valued: from the viewpoint of the Plaintiff.
>
> . . . .
>
> In the present case, Defendant has asserted that the future injunction sought would stop it from doing force-placed business insurance in this state. Its representative asserts, by uncontested affidavit, that its "revenues (net written premium) from force-placed mortgage insurance in the State of Alabama" exceeded $450,000 in each of the last three years. In addition, Defendant asserts that if it were to be enjoined from writing such insurance in Alabama, it would "risk[ ] losing" such business throughout the United States, because the companies who place such insurance prefer to deal with a nationwide insurer. This value is flawed, however, and should not be used by this Court. Defendant's affidavit values the injunction from the perspective of the defendant, an approach which is not allowed by the Eleventh Circuit. . . .
>
> . . . .
>
> What that value is, the court cannot determine. What does it mean to the putative class of plaintiffs here that this particular insurance company would no longer be able to write force-placed insurance in Alabama? The court is inclined to answer: nothing, at least monetarily. Plaintiffs will not gain financially because the Defendant loses financially. Plaintiff's financial recovery will come, rather, from their tort and equity claims, not from the prospective injunctive relief.
>
> Indeed, the court finds itself somewhat baffled by the prospect of valuing a future injunction in a case where the plaintiffs are a class of former consumers of the defendant. It is not the court's job to speculate what that value may be, however. It is the Defendant's job to show the court that the value of the prospective injunctive relief clearly exceeds the jurisdictional limit. This, the Defendant has not done.

*Crawford v. American Bankers Ins. Co.*, 987 F.Supp. 1408, 1414–15 (M.D.Ala.1997). As explained above, factoring in the injunction adds, at most, three hundred dollars to the amount in controversy attributable to the Ms. Colon, or any other potential class member. Accordingly, we agree with the Plaintiff that jurisdiction does not vest as a result of the prospective injunctive relief included in the Complaint.[3]

### 3. *Attorneys' Fees*

Positing jurisdiction on the Defendants' second theory involves two steps. First, the Court must accept Rent–A–Center's contention that under N.Y. C.P.L.R. § 909, all attorneys' fees, which Rent–A–Center predicts will exceed $75,000 here, should be awarded to the class representative. And second, having thus established primary jurisdiction over the named Plaintiff, the Court can then exercise supplemental jurisdiction over the remaining class members pursuant to 28 U.S.C. § 1367.

---

**3.** Finally, we note that *Bass v. Rockefeller*, 331 F.Supp. 945 (S.D.N.Y.), *vacated as moot*, 464 F.2d 1300 (2d Cir.1971), does not mandate a different result. That case, which concerned an injunction to restrain the State of New York from implementing statutes that would reduce the availability of Medicaid benefits, was considered by the Second Circuit to involve the functional equivalent of a trust res. As the *Bass* Court made clear, "[t]he prime consideration of the class is the right of the medically needy to have an unreduced Medicaid 'fund' available to them." *Id.* at 951. Such facts are not present here. *Compare Gilman*, 104 F.3d at 1422–28 (distinguishing claim for compensatory damages based on improper order flow payments by brokers from "common fund" cases).

We reject both prongs of this particular jurisdictional theory. In doing so, we join the well-reasoned holdings of at least two other courts in this Circuit. *See, e.g., Bernard v. Gerber Food Prods. Co.,* 938 F.Supp. 218, 223–24 (S.D.N.Y.1996) (declining to aggregate attorneys' fees and exercise supplemental jurisdiction over unnamed class members); *Trapanotto v. Aetna Life Ins. Co.,* No. 95 Civ. 10704, 1996 WL 417519, at *8–11 (S.D.N.Y. July 25, 1996) (same).

### a. Award of Attorney's Fees

■ With regard to the first prong of the Defendants' argument, Rent–A–Center correctly observes that "[a] potential award of attorneys' fees *may* be considered by the court when determining whether a case involves the jurisdictional minimum." *Gardiner Stone Hunter Int'l v. Iberia Lineas Aereas,* 896 F.Supp. 125, 128 (S.D.N.Y.1995).[4] Such consideration is appropriate, however, only if the attorneys' fees are reasonable, and "only if they are provided for by contract or state statute." *Trapanotto,* 1996 WL 417519, at * 9 (collecting cases).

The text of N.Y. C.P.L.R. § 909 provides that "[i]f a judgment in an action maintained as a class action is rendered in favor of a class, the court in its discretion may award attorneys' fees to the representatives of the class based on the reasonable of the legal services rendered and if justice requires, allow recovery of the amount awarded from the opponent of the class." Section 909, then, "provides for two contingencies: first, the court can award attorneys' fees and order that they be taken out of the judgment; second, the court can award attorneys' fees to be paid by the class opponent. It is only the latter which augments the amount in controversy." *Trapanotto,* 1996 WL 417519, at *9 n. 5.

■ In the face of this statutory language, we find recourse to the language of *Trapanotto* particularly appropriate. As Judge Preska explained there:

I agree that it would be within my discretion in the present case to award attor-

neys' fees to the representatives of a victorious class. Having considered § 909 within the context of the present action, I decline to exercise that discretion. I must certainly decline at this early stage of the litigation to find that "justice requires" attorneys' fees, if awarded, should be awarded from the class opponent rather than taken out of the judgment. To do so now would be premature. Expectedly, there is no factual support in the pleadings or moving materials upon which to base such a pivotal decision. Furthermore, a prospective decision on prospective fees would do nothing to advance the purpose of awarding attorneys' fees in class actions.

The class here has not yet been certified. Without certification, of course, it is impossible to award fees under § 909. Even if a class was certified, there is no factual predicate to estimate reasonably the representative plaintiff's own damages, other than to assume, given the nature of the case, that they are small. Nor is there any basis to estimate reasonably the amount of work required for the case, the value of that work to the class, or the likely amount of attorneys' fees, much less what fees would be "reasonable." Hence, there is an inadequate basis from which to infer that, even after adding attorneys' fees to the plaintiff's damages, the [jurisdictional] threshold would be met. Not only would it be premature to estimate these facts and figures at this point, but, again given the nature of the case–testing the applicability of a new [ ] law in the State of New York–it is a task better left to a court of New York....

I decline to add prospective attorneys' fees to plaintiff's damages in order to satisfy § 1332's amount-in-controversy requirement. It does not appear that § 909 of the C.P.L.R. was intended to serve as such an easily invoked jurisdictional hook. Not only is an award of attorneys' fees dependent on the discretion of the court, the satisfaction of the criteria set out in C.P.L.R. § 901, and proper certification, but "[i]t was never the intention of the

---

4. *Gardiner* did not involve a class action, and thus the crucial question of aggregation found

here was not present before Judge Koeltl. *Id.* at 128.

Legislature that class action certification be awarded solely for the purpose of affording plaintiffs the opportunity to recover attorneys' fees from the adversary of the class."

*Id.* at 9–10 (citations omitted). We find the foregoing observations applicable to the present case, and note further that, as here, the plaintiff in *Trapanotto* also stated a claim under § 349 of the N.Y. Gen. Bus. Law. *See id.* at *1; *Bernard,* 938 F.Supp. at 219 (noting that plaintiffs' stated claims under both §§ 349 and 350 of the N.Y. Gen. Bus. Law). Accordingly, we join the aforementioned courts in this Circuit, as well as others, *see, e.g., Lauchheimer v. Gulf Oil,* 6 F.Supp.2d 339, 348–49 (D.N.J.1998); that have declined to treat prospective attorneys' fees in class actions as a bootstrap for establishing federal jurisdiction.

### 4. Supplemental Jurisdiction

■ Even assuming *arguendo* that the first prong of the Defendants' theory concerning attorneys fees were correct, an independent basis would exist for denying federal court jurisdiction. Specifically, we find that, contrary to Rent–A–Center's assertion, the passage of 28 U.S.C. § 1367 did not overrule, impliedly or otherwise, the core holding of *Zahn.*

The Defendants place heavy emphasis on *In re Abbott Labs.,* 51 F.3d 524 (5th Cir. 1995), a case that held that the 1990 legislative enactment of 28 U.S.C. § 1367 effectively overruled *Zahn,* thereby permitting federal courts to exercise supplemental jurisdiction over the unnamed class members whose claims did not reach the jurisdictional minimum. *See id.* at 526–27 (collecting secondary sources discussing issue). Other courts, we note, have sanctioned this approach as well. *See, e.g., Tylka v. Gerber Prods. Co.,* 1996 WL 341441 (N.D.Ill. June 18, 1996).

The Defendants' position, however, is "the minority view and has not been followed in this Circuit." *Bernard,* 938 F.Supp. at 223. That is, although the Court of Appeals has yet to rule on this specific question, the district courts in the Second Circuit "ha[ve]

not embraced the idea that 28 U.S.C. § 1367 overrules *Zahn.*" *Id.* at 224; *see, e.g., Benfield v. Mocatta Metals Corp.,* No. 91 Civ. 8255, 1993 WL 148978, at *4–5 (S.D.N.Y. May 5, 1993); *Trapanotto,* 1996 WL 417519, at *11 (collecting authorities and noting that "[t]o the extent that case law in this Circuit disfavors supplemental class member jurisdiction, and to the extent that the prohibition against aggregation of individual (as opposed to common) claims to meet the amount-in-controversy requirement has not been disturbed by *Zahn* or § 1367, it would be inconsistent to allow a class representative to meet the same threshold by aggregating the class's attorneys' fees"). Accordingly, even though we need not reach this question in light of the prior rulings in this Opinion, we note that, "even if successful on the first prong of this argument and the Court decided to award attorneys' fees to [the class representative], the defendant's argument would fail on the second prong as the Court would not be able to exercise supplemental jurisdiction over the remaining plaintiffs' claims." *Bernard,* 938 F.Supp. at 224.

### CONCLUSION

For the foregoing reasons, the Plaintiff's Motion is granted. This case is remanded to the Supreme Court, Bronx County.

SO ORDERED.